**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

United States of America,

Plaintiff/Respondent,

vs.

Jose Luis Delacruz,

Defendant/Petitioner.

Criminal No. 2:14-cr-00047
Civil No.: 3:19-cv-00030

---

**ORDER DENYING MOTION TO VACATE UNDER 28 U.S.C. § 2255 AND**
**DENYING MOTION TO AMEND MOTION TO VACATE UNDER 28 U.S.C. § 2255**

---

[¶1]   THIS MATTER comes before the Court on two motions filed by the Defendant. First, the Defendant filed a Motion to Vacate under 28 U.S.C. § 2255 on February 5, 2019. Doc.  No. 428. The Defendant was given leave to file his Memorandum in Support of his Motion at a later date. Doc. No. 432. On June 17, 2019, the Defendant filed his Memorandum in Support. Doc. No. 433. A Supplement was filed by the Defendant on June 28, 2019. Doc. No. 435. The United States filed its Response on March 18, 2020. Doc. No. 453. The Defendant filed his Reply on September 7, 2021. Doc. No. 485.

[¶2]   On January 20, 2022, the Defendant filed a Motion for Leave to File supplemental grounds for relief under 28 U.S.C. § 2255. The United States filed a Response on March 3, 2022. Doc. No. 492. The Defendant did not file a Reply.

[¶3]   For the reasons set forth below, both of the Defendant's Motions are **DENIED**.

## BACKGROUND

[¶4]   On July 17, 2014, the Defendant was originally charged in a criminal Complaint with Conspiracy to distribute controlled substances in the District of North Dakota. Doc. No. 1. He

- 1 -

made his initial appearance on the Complaint on July 28, 2014. See Doc. No. 7. Attorney Theodore Sandberg ("Attorney Sandberg") represented the Defendant at this hearing. Id. Delacruz was detained pending trial. Doc. No. 13.

[¶5]     On August 13, 2014, an Indictment was filed charging the Defendant with (1) Conspiracy to Possess with Intent to Distribute and Distribute a Controlled Substance and (2) Use of a Firearm During a Drug Trafficking Crime. Doc. No. 14. On October 8, 2014, a Superseding Indictment was filed, adding additional co-defendants to the charges. Doc. No. 22.

[¶6]     On November 7, 2014, Attorney Sandberg moved to withdraw has counsel for the Defendant, citing a conflict with potential witnesses. Doc. No. 83. After an *ex parte* hearing on the motion, Attorney Sandberg's request to withdraw as counsel was granted. Doc. No. 110. Attorney Brian Toay ("Attorney Toay") was appointed to represent the Defendant on November 26, 2014.

[¶7]     On January 26, 2015, the Defendant filed a *pro se* Motion for New Attorney, claiming he had "no real contact with [his attorney]." Doc. No. 124, p. 1. After an *ex parte* hearing, the Court denied this request, finding "there is not a breakdown in the attorney-client relationship that requires the appointment of a new attorney or that will improve by appointing a new attorney." Doc. No. 137. The Defendant filed another Motion for New Attorney on February 17, 2015. Doc. No. 144. The Court denied this request on February 18, 2015. Doc. No. 145.  The Defendant again asked for a new attorney on April 27, 2015, claiming Attorney Toay had provided ineffective assistance of counsel. Doc. No. 193. The Court denied this motion finding the Defendant only asserted conclusory claims of ineffective assistance of counsel and that such a claim was not ripe. Doc. No. 197.

[¶8]     The matter went to trial from May 11 through May 13, 2015. See Doc. No. 232. The Defendant was represented by Mr. Toay at trial. A jury returned guilty verdicts on both counts of

the Superseding Indictment. Doc. No. 233. After trial, Attorney Brian Toay filed a Motion for

Acquittal and a Motion for New Trial. Doc. Nos. 237, 238. On May 21, 2015, the Court held an

*ex parte* status conference to address Attorney Toay's continued representation of the Defendant.

The same day as the hearing, the Court granted the Defendant's oral motion for new counsel

because it came to light the Defendant had filed a disciplinary complaint against Attorney Toay.

Doc. No. 240 The Court appointed Attorney Jade Rosenfeldt[1] ("Attorney Rosenfeldt") to represent

the Defendant. Id.

[¶9]    Once appointed, Attorney Rosenfeldt moved to release the Defendant from Custody on

June 3, 2015. Doc. No. 247. The Court denied this request on June 8, 2015. Doc. No. 249. On July

13, 2015, Attorney Rosenfeldt moved for an extension of time to file a memorandum in support

of the Motions for Acquittal and New Trial filed by Attorney Toay. Doc. No. 281. The Court

granted the Motion on July 14, 2015. Doc. No. 283. Ultimately, the memorandum in support of

the Motion for Acquittal was filed on October 26, 2015. Doc. No. 318. The memorandum in

support of the Motion for New Trial was filed on March 16, 2016. Doc. No. 343. On March 18,

2016, the Court denied these two motions. Doc. No. 344.

[¶10]   Prior to trial, the United States filed an Information to Establish Prior Convictions,

certifying two prior convictions felony-level controlled substance convictions. Doc. No. 62. This

was subsequently amended on April 20, 2016, shortly before the Court held a hearing on whether

one of the Defendant's prior convictions was counseled. See Doc. Nos. 348, 349, 352. The Court

ultimately sentenced the Defendant to a term of life imprisonment on April 25, 2016. Doc. No.

---

[1] Subsequent to representing the Defendant in this matter, Attorney Rosenfeldt was appointed a Judge of the District Court for the Seventh Judicial District in Minnesota state court. Because reference to Attorney Rosenfeldt occurs within the context of her representation of the Defendant, the Court will refer to her as Attorney Rosenfeldt, not Judge Rosenfeldt.

354. The Defendant appealed the Judgment on April 27, 2016. Doc. No. 357. The Court of Appeals affirmed the judgment on July 31, 2017. Doc. No. 399.

[¶11]   The present Motion to Vacate under 28 U.S.C. § 2255 was filed on February 5, 2019. Doc. No. 428. In it, the Defendant raises twelve grounds for relief: (1) Attorney Toay operated under a conflict of interest  throughout the trial proceedings until Attorney Toay admitted the conflict after the trial; (2) Attorney Toay was ineffective when he failed to advise the Defendant of his plea options during plea negotiations; (3) Attorney Toay was ineffective when he failed to advise the Defendant he could proceed by a bench trial; (4) Attorney Toay was ineffective when he failed to advise the Defendant the decision to testify was the Defendant's alone and he failed to prepare the Defendant to testify; (5) Attorney Toay was ineffective when he failed to advise the Defendant of his right to represent himself; (6) Attorney Toay was ineffective when he failed to challenge the empanelment of an all-white jury; (7) Attorney Toay was ineffective when he failed to conduct legal research on the issue of the Defendant's purported withdrawal form the conspiracy and the drug transactions after he left the conspiracy; (8) Attorney Toay was ineffective when he failed to adequately prepare for and perform at trial; (9) Attorney Toay was ineffective when he failed to research the facts and law relating to the drug amount used for sentencing enhancement purposes; (10) Attorney Toay was ineffective when he failed move for acquittal on Count Two (firearm used in furtherance of the drug conspiracy) because the United States allegedly amended the charge; (11) Attorney Rosenfeldt was ineffective when she failed to challenge the Information Establishing Prior Convictions (Doc. No. 349); and (12) the cumulative effective of these alleged deficiencies resulted in the Defendant being denied Counsel as guaranteed by the Sixth Amendment. See Doc. No. 248.

[¶12]   On January 20, 2022, the Defendant moved to supplement his Motion to Vacate under 28 U.S.C. § 2255 to assert what appears to be nine new theories for relief: (1) Attorney Toay was ineffective when he failed to raise a *corpus delicti* rule violation; (2) Attorney Toay was ineffective when he failed challenge the lack of physical evidence and proof by alleged hearsay admissions and statements; (3) Attorney Toay and Attorney Rosenfedlt were ineffective when they failed to raise a <u>Kastigar</u> objection to the alleged compelled testimony of co-conspirators; (4) Attorney Toay and Attorney Rosenfedlt were ineffective when they failed to challenge the indictment as being defective; (5) Attorney Toay and Attorney Rosenfedlt were ineffective when they failed argue the United States filed to prove the quantity of drugs "agreed upon" (Doc. No. 489-1 at pp. 6-7); (6) Attorney Toay and Attorney Rosenfedlt were ineffective when they failed to contest the lack of evidence showing an agreement; (7) Attorney Toay and Attorney Rosenfedlt were ineffective when they failed challenge the court reporter not transcribing the reading of the jury instructions; (8) the state and federal agents subjected him to involuntary servitude by charging him in federal court because there was a lack of evidence that would have allowed him to plead guilty; and (9) the supplemental grounds one through eight have resulted in an abuse of legal process resulting in his involuntary servitude. Doc. No. 489-1. The Defendant also argues the one-year statute of limitation period is unconstitutional as it conflicts with the Thirteenth Amendment's prohibition on involuntary servitude. Doc. No. 489-1 at p. 12.

## DISCUSSION

### I.   Motion to Vacate under 28 U.S.C. § 2255

#### a.   General Legal Standards

[¶13]   "28 U.S.C. § 2255 provides a federal prisoner an avenue for relief if his 'sentence was imposed in violation of the Constitution or laws of the United States, or . . . was in excess of the

maximum authorized by law.'" <u>King v. United States</u>, 595 F.3d 844, 852 (8th Cir. 2010) (quoting 28 U.S.C. § 2255(a)).  This requires a showing of either constitutional or jurisdictional error, or a "fundamental defect" resulting in a "complete miscarriage of justice." <u>Davis v. United States</u>, 417 U.S. 333, 346 (1974); <u>Hill v. United States</u>, 368 U.S. 424, 428 (1962). A motion brought under Section 2255 is not a substitute for a direct appeal and is not the proper way to complain about simple trial errors. <u>Anderson v. United States</u>, 25 F.3d 704, 706 (8th Cir. 1994). A Section 2255 movant "must clear a significantly higher hurdle than would exist on direct appeal." <u>United States v. Frady</u>, 456 U.S. 152, 166 (1982). Section 2255 is "intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." <u>Davis</u>, 417 U.S. at 343.

[¶14]   A Section 2255 motion "may be dismissed without hearing if (1) movant's allegation, accepted as true, would not entitle the petitioner to relief, or (2) [the] allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions rather than statements of fact." <u>Winters v. United States</u>, 716 F.3d 1098, 1103 (8th Cir. 2013) (quoting <u>Koskela v. United States</u>, 235 F.3d 1148, 1149 (8th Cir. 2001)); <u>see also</u>, <u>Holloway v. United States</u>, 960 F.2d 1348, 1358 (8th Cir. 1992) (a single, self-serving, self-contradicting statement is insufficient to render the motions, files and records of the case inconclusive); <u>Smith v. United States</u>, 618 F.2d 507, 510 (8th Cir. 1980) (mere statement of unsupported conclusions will not suffice to command a hearing). In this case, the Defendant raises numerous ineffective assistance of counsel claims under the Sixth Amendment to the United States Constitution.

[¶15]   The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. To be eligible for habeas relief based on ineffective assistance of counsel, a defendant must satisfy the two-part test announced in <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). First, a defendant must establish that defense counsel's representation was constitutionally

deficient, which requires a showing that counsel's performance fell below an objective standard of reasonableness.  Id. at 687-88. This requires showing that counsel made errors so serious that defense counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment.  Id. at 687-88.  In considering whether this showing has been accomplished, "[j]udicial scrutiny of counsel's performance must be highly deferential."  Id. at 689. Courts seek to "eliminate the distorting effects of hindsight" by examining defense counsel's performance from counsel's perspective at the time of the alleged error.  Id.

[¶16]   Second, a defendant must demonstrate that defense counsel's performance prejudiced the defense.  Strickland, 466 U.S. at 687.  Under this prong, "there [must be] a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."  Id. at 694.  A reasonable probability is one "sufficient to undermine confidence in the outcome." Wiggins v. Smith, 539 U.S. 510, 534 (2003).  An increased prison term may constitute prejudice under the Strickland standard.  Glover v. United States, 531 U.S. 198, 203 (2001).

[¶17]   There is a strong presumption that defense counsel provided "adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  Strickland, 466 U.S. at 690; Vogt v. United States, 88 F.3d 587, 592 (8th Cir. 1996). A court reviewing defense counsel's performance must make every effort to eliminate hindsight and second-guessing. Strickland, 466 U.S. at 689; Schumacher v. Hopkins, 83 F.3d 1034, 1036-37 (8th Cir. 1996). Under the Strickland standard, strategic decisions made after a thorough investigation of both the law and facts regarding plausible options are virtually unchallengeable. Strickland, 466 U.S. at 690.

[¶18]   When a defendant asserts that there are multiple deficiencies, each claim is reviewed independently. Middleton v. Roper, 455 F.3d 838, 851 (8th Cir. 2006). There is no "cumulative

error" rule applied to assistance of counsel claims. <u>United States v. Robinson</u>, 301 F.3d 923, 925 n.3 (8th Cir. 2002). Additionally, claims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in <u>Strickland</u>. <u>Hill v. Lockhart</u>, 474 U.S. 52, 57 (1985). In cases where a defendant complains that ineffective assistance led him to accept a plea offer as opposed to proceeding to trial, the defendant will have to show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill</u>, 474 U.S. at 52.

### b. Ground One: Ineffective Assistance of Counsel for Attorney Toay Continuing to Represent Defendant After an Alleged Conflict of Interest Arose

[¶19]   The Defendant first argues Attorney Toay failed to remove himself from representing the Defendant after the Defendant purportedly filed a disciplinary complaint against Attorney Toay. The United States argues the Defendant's claim is contradicted by the record and that the Defendant failed to carry his burden of articulating an objectively reasonable or plausible alternative strategy Attorney Toay declined to pursue because of the alleged conflict. The Court agrees with the United States.

[¶20]    In order to succeed on an ineffective assistance of counsel claim due to an alleged conflict of interest, a defendant must show an actual conflict existed that "adversely affected his lawyer's performance." <u>Kiley v. United States</u>, 914 F.3d 1142, 1144-45 (8th Cir. 2019) (quoting <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 348 (1980)). This, however, does not create two separate lines of inquiry. <u>Id</u>. An actual conflict for Sixth Amendment purposes "is a conflict of interest that adversely affects counsel's performance." <u>Mickens v. Taylor</u>, 535 U.S. 162, 172, n.5 (2002). "The effect must be actual and demonstrable, causing the attorney to choose to engage or not to engage in particular conduct." <u>Noe v. United States</u>, 601 F.3d 784, 790 (8th Cir. 2010). "To show adverse effect, a defendant must show that his attorney failed to pursue a reasonable alternate defense strategy

because of the conflict." Kiley, 914 F.3d at 1145. In other words, "[t]o make such a showing, the defendant must 'identify a plausible alternative defense strategy or tactic that defense counsel might have pursued, show the alternative strategy was objectively reasonable under the facts of the case, and establish that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict.'" Noe, 601 F.3d at 790 (quoting Winfield v. Roper, 460 F.3d 1026, 1039 (8th Cir. 20016)).

[¶21]   The Defendant's briefing has failed to show or identify any actual known conflict that adversely affected Attorney Toay's trial strategy. The Defendant has also failed to show an alternative strategy that was objectively reasonable under the circumstances of this case. In fact, he has failed to provide any reasonable alternative trial strategy Attorney Toay could have utilized at trial. Finally, the Defendant has not identified any reasonable alternative trial strategy requested by the Defendant that Attorney Toay refused due to the existence of the alleged conflict. These failures alone are detrimental to the Defendant's claim.

[¶22]   The Defendant's claim that a known conflict of interest arose before trial is undermined by the record in this case. Winters, 716 F.3d at 1103. The Defendant claims he told Attorney Toay he filed a disciplinary complaint against Attorney Toay before trial. According to the Defendant, Attorney Toay responded he did not care about the complaint.[2] The record suggests the Defendant filed a disciplinary complaint on or around April 20, 2015 (approximately 21 days before trial). Doc. No. 486. On April 20, 2015, the Disciplinary Board of the Supreme Court of North Dakota

---

[2] The Defendant's § 2255 Petition alleged Attorney Toay used inappropriate language in response to the purported disciplinary complaint. Having reviewed the record, the Court concludes this allegation is flatly contradicted by the record. Attorney Toay, in all of his written communications with the Defendant and oral communications with the Court was nothing but professional. See Doc. Nos. 306, 341, 342, 345-1, 371, 373. The Court believes Attorney Toay acted professionally in each interaction with the Defendant.

sent the Defendant a letter acknowledging receipt of his complaint against Attorney Toay. Id. However, this record only shows the Defendant made the Complaint. Id. It does not provide evidence Attorney Toay was made aware of the Complaint. See id. It does not appear from this letter the Disciplinary Board sent Attorney Toay a copy at that time. See id. Also absent from the record is the disciplinary complaint itself and any documentation regarding if and when Attorney Toay was made aware of the disciplinary complaint from the Disciplinary Board.

[¶23]   The record, however, establishes Attorney Toay withdrew from representation once he was made aware a conflict of interest arose.  An *ex parte* status conference was held on May 21, 2015—eight days after trial concluded. Doc.  No. 240. At that hearing, the Defendant asked for a new attorney because he filed a disciplinary complaint against Attorney Toay. Id. Attorney Toay indicated to the Court the Defendant filed this complaint. Id. The Court has reviewed the record, and this was the first time the Defendant requested a new attorney due to his filing of a disciplinary complaint against Attorney Toay. See id. The record establishes Attorney Toay promptly withdrew from representing the Defendant once he knew the disciplinary complaint was filed. See id.

[¶24]   Even assuming there was a conflict of interest, the Defendant fails to show Attorney Toay declined to pursue an objectively reasonable trial strategy due to the alleged conflict. In fact, the record establishes the Defendant repeatedly refused to cooperate in the preparation of the defense of his case. See, e.g., Doc. No. 342, pp. 10-12 (the Court explaining to the Defendant the importance of cooperating with Attorney Toay to prepare for trial and the Defendant admitting the need to work with Attorney Toay); Doc. No. 344 ("It is apparent from the record that the breakdown in communication was the result of Delacruz's refusal to meet with appointed counsel and confer. His unwillingness to communicate with counsel is not a basis that entitled him to a new attorney. Moreover, the record is plain – Delacruz's counsel presented a competent defense

and zealously advocated on Delacruz's behalf, despite the lack of communication."). The record clearly establishes the Defendant failed to show he provided Attorney Toay a reasonable alternative strategy that Attorney Toay rejected due to the alleged conflict.

[¶25]   Accordingly, the record clearly establishes Attorney Toay withdrew as counsel for the Defendant once he was formally made aware the disciplinary complaint was filed. The Defendant's claim that he filed a disciplinary complaint prior to trial is, therefore, inherently incredible. See 28 U.S.C. § 2255; Engelson v. United States, 86 F.3d 238, 240 (1995). It is also inconsequential. Even if there was a conflict due to the filing of a disciplinary complaint, the Defendant has not shown an objectively reasonable strategy that was rejected by Attorney Toay due to the alleged conflict. Accordingly, the Defendant's Motion to Vacate under 28 U.S.C. § 2255 on Claim One is **DENIED**.

### c.   Claim Two: Ineffective Assistance of Counsel During Plea Negotiations

[¶26]   The Defendant claims Attorney Toay was ineffective for failing to advise the Defendant of the various plea offers made in this case by the United States and for failing to negotiate a plea deal for the Defendant.[3] The United States argues the record shows Attorney Toay attempted to discuss plea negotiations with the Defendant, but the Defendant refused to communicate with Attorney Toay. In addition, the United States argues the record clearly establishes it made a plea offer to the Defendant a week prior to trial that would decertify the Defendant's two prior felony

---

[3] The Defendant also makes two suggestions that could be interpreted as arguments. First, he suggests the prior convictions must be noticed prior to sentencing. But this occurred on October 21, 2014, well before trial. Doc. No. 62 (Information to Establish Prior Conviction Pursuant to 21 U.S.C. § 851). Next, the Defendant suggests the United States was required to prove his prior convictions at trial. It has been long held, however, that the fact of prior convictions does not need to be proven beyond a reasonable doubt at trial. See Almendarez-Torres v. United States, 523 U.S. 224, 246-47 (1998) (holding proof of a prior conviction is a sentencing enhancement, not a separate element of an offense). The prior convictions are discussed in further detail below.

drug offenses, which would reduce his mandatory minimum from life to ten years on Count One with a consecutive seven years on Count Two. According to the United States, the record shows Delacruz refused the plea deal and elected to proceed to trial. The Court agrees with the United States.

[¶27]   A defendant has the right to effective assistance of counsel in the plea-bargaining process. Lafler v. Cooper, 566 U.S. 156, 162 (2012) ("Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process."); Mayfield v. United States, 955 F.3d 707, 711 (8th Cir. 2020) ("The Sixth Amendment right to effective assistance of counsel includes representation during the plea bargaining process."); Allen v. United States, 854 F.3d 428, 432 (8th Cir. 2017) ("[The Sixth Amendment] right [to counsel] extends to the plea-bargaining process such that '[i]f a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it.'" (quoting Lafler, 556 U.S. at 168)). In the plea-bargaining context, the Defendant must show "that counsel's performance was both deficient and prejudicial." Allen, 854 F.3d at 432 (citing Strickland, 466 U.S. at 693).

[¶28]   The record reflects Attorney Toay provided significant and effective assistance of counsel relating to the plea-bargaining process in this case. Attorney Toay sent numerous letters regarding plea negotiations. Doc. No. 453-1, pp. 10 ("As your attorney we really need to discuss this case and try to come up with a plan to either fight your **case or mitigate the sentence you are facing**. As I have stated every time we have met, I am here to fight for you regardless of the path you choose. However, I cannot help you if you will not meet with me and tell me what you want to do." (emphasis added)); 13([**I**]**f you want me to try to negotiate some type of deal**, you need to let me know as soon as possible. I am here to help you, but you need to work with me to get anything done." (emphasis added)); 15 ("If you have any defense you want me to raise, **or have**

**any desire to have me try to negotiate with the Government**, you need to contact me immediately and let me know." (emphasis added)); 17 ("[Y]ou should stop worrying about your criminal history points, and instead worry about your upcoming trial **and/or whether you want to work out a deal with the Government.**" (emphasis added)).

[¶29]   The record also plainly establishes the failure to engage in plea negotiations or meaningful negotiations falls squarely on the Defendant's shoulders. The Court informed the Defendant in detail his options were to proceed to trial, enter an open plea, or negotiate a plea agreement. Doc. No. 341, pp. 7-8. The Court further noted Attorney Toay attempted to explain these realities in a letter and the Court discussed the importance of the Defendant communicating with Attorney Toay. Id. at p. 9 ("I think it's important that you and your lawyer work to communicate with each other about the defense of your case if the case can be successfully defended, whether you should be looking at other opportunities to try and reduce the sentence. I mean, and that's the conversation you really need to focus on."); Doc. No. 127-1 (letter from Attorney Toay to Defendant, dated January 19, 2015, explaining the Defendant's options regarding the case).  Finally, at a hearing on February 10, 2015, the Court inquired with Mr. Toay whether the Defendant would proceed to trial or if there would be a plea agreement. Doc. No. 371, p. 19. Mr. Toay responded, "Your Honor, we are looking to go to trial." Id. This was uncontradicted by the Defendant. Id.

[¶30]   Finally, at the final pretrial conference the morning of trial on May 11, 2015, the Court inquired about the plea negotiations. Doc. No. 306, p. 10. The following colloquy occurred on the record at the final pretrial conference:

> THE COURT: Alright. Let's start with this. Mr. Toay, Mr. Myers has indicated to the Court that there was a plea offer made. Did you, in fact, receive a plea offer from that?
>
> MR. TOAY: I did, Your Honor. I did relay that to my client. It was on Thursday morning. I met with him Thursday morning. We relayed the offer to him with my

advise regarding that offer, gave him the better part of the day to think it over, went back and met with him Thursday afternoon. He did reject that offer. I revisited the issue with him again on Friday because Pat Peltier had taken the government's final offer to see if that had affected him at all and it did not.

THE COURT: All right. Mr. Peltier, did you in fact have a discussion about a final plea offer from the United States? Or Mr. Delacruz, did you receive an offer?

THE DEFENDANT [Mr. Delacruz]: I just got one from Brian Toay. I didn't receive anything in writing or nothing.

THE COURT: Yeah. That's not really the issue. Did you - - were  you informed that the government had made a willing - - had expressed a willingness to accept a plea?

THE DEFENDANT: Yeah. I got a letter from Brian Toay stating that - - to plead guilty in open court.

THE COURT: All right. And did he explain what the government's offer was if you plead guilty?

THE DEFENDANT: Just that I would be going into open court and not knowing what I was getting and - - an open plea so I would go in blind to what - -

THE COURT: Mr. - -

THE DEFENDANT: I really don't understand.

THE COURT: Mr. Myers, do you want to state for the record what the government's plea offer was?

MR. MYERS: Yes, Your Honor. We offered to withdraw the two priors that have been previously certified. The defendant would plead guilty on an open basis to both counts of the Indictment. That was our offer. And I was informed that that offer was rejected.

THE COURT: Alright. And Mr. Delacruz, you understand that that has the effect of taking the mandatory minimum life sentence off the table?

THE DEFENDANT: (Nods head.)

THE COURT: Do you understand?

THE DEFENDANT: Yes.

> THE COURT: And do you understand that if you go to trial and if there's a conviction the way it sits right now there will be a mandatory minimum sentence of life in prison?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And do you understand that that means that I'll have no alternative if that were to happen but to sentence you to life without the possibility of parole?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Okay. Is that the same offer that was expressed to you yesterday or Thursday?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Alright. That satisfies the requirement that we make sure that the offer was passed on.

Doc. No. 306, pp. 10-13. In short, the record establishes Attorney Toay was able to secure a very favorable plea agreement from the United States for the Defendant. The Court ensured the Defendant was aware of and continued to reject the plea offer extended by the United States. The Defendant confirmed he was aware of, rejected the offer, and desired to proceed to trial, consistent with Attorney Toay's representation at the hearing on February 10, 2015.

[¶31]   Furthermore, the Defendant seems to suggest the United States gave Attorney Toay a ten-year plea offer, which Attorney Toay did not communicate to the Defendant. This is plainly contradicted by the colloquy discussed above at the final pretrial conference. In addition, at sentencing, the Defendant claimed, "I was forced to go to trial without an adequate defense and without any plea or negotiations to pursue one." Doc. No. 365, p. 15. The Court rejected this characterization of the events leading up to trial. Id. at p. 16. The Court engaged the Defendant on this:

> THE COURT: It's also only fair to note for the record that the government offered to decertify both convictions prior to trial, which would have reduced the mandatory minimum sentence to 10 years and you declined that offer. And I note

- 15 -

that not because it's - - I'm questioning the judgment that you exercised because that's not my job. I note it just for the fact that the only person in this case that at any time had any discretion to take those mandatory minimum sentences off the table was you and you elected not to take that offer. Now they did not - -

THE DEFENDANT: It was a 20-year offer, Your Honor, not a 10. You went down to 10.

THE COURT: What I told you - - I want you to listen carefully because I went back and reread the record before this hearing. I told you that there would be a 10-year period mandatory minimum and there was no binding offer as to any number of years. What the government said is they would offer 20 years as I understand it but they said - - Mr. Myers said on the record that he would withdraw the certifications of the priors. So it would actually 10 plus the consecutive sentence for the firearm if you were convicted but I think that - - I don't remember exactly what the plea offer was but I know that it was substantially less than life, and the last person that had a chance to take life off the table was you.

\*       \*       \*

THE COURT: In any event for you to say there was never an offer, that's a false statement.

\*       \*       \*

Doc. No. 365, pp. 16-18. The record contradicts the Defendant's assertion that the United States offered him a ten-year sentence, but that offer was not communicated by Attorney Toay. The Defendant was aware the United States had made a plea offer to remove the mandatory life sentence, making the mandatory minimum on Count One ten years. He was also aware Count Two carried a mandatory consecutive seven-year sentence, making his total mandatory minimum sentence seventeen years. To complain Attorney Toay did not communicate plea offers or negotiate a plea deal is inherently incredible and contradicted by the record. See 28 U.S.C. § 2255; Engelson, 86 F.3d at 240.

[¶32]   The Defendant has failed to meet his burden that Attorney Toay's performance in this regard was deficient or that he suffered prejudice as a result. The record shows Attorney Toay made every effort to persuade the Defendant to engage in plea negotiations and, when offered a

plea deal, the Defendant freely chose to reject the offer. The Defendant's claims Attorney Toay failed to engage in plea negotiations and to pass along plea offers to the Defendant are inherently baseless and contradicted by the record.[4] Accordingly, the Defendant's Motion to Vacate under 28 U.S.C. § 2255 as to Claim Two is **DENIED**.

### d. Claim Three: Ineffective Assistance of Counsel Regarding Possibility of Bench Trial

[¶33]   The Defendant argues Attorney Toay provided ineffective assistance of counsel by not advising Delacruz of the possibility of a bench trial on the drug quantity issue with a stipulation of facts on the other elements. The United States argues the Defendant has failed to meet his burden to establish Attorney Toay's alleged failure fell below the required reasonableness standard or that he suffered prejudice as a result. To that end, the United States avers any discussion about a bench trial would have been futile because the United States has a general policy not to consent to a bench trial and the Defendant does not have a right to a bench trial. The United States further contends the Defendant's argument he would have stipulated to facts is contrary to the record, in which Attorney Toay vigorously defended the Defendant at trial, contesting and challenging the facts. The Court agrees with the United States.

[¶34]   To reiterate, in order to establish a claim for ineffective assistance of counsel, the defendant must show (1) Attorney Toay's representation "fell below an objective standard of reasonableness" and (2) the Defendant suffered prejudice as a result. <u>Strickland</u>, 466 U.S. at 687-88. The Eighth Circuit has noted, "[i]neffective assistance should not be found under <u>Strickland</u> when counsel

---

[4] The Defendant also seems to suggest Attorney Toay was ineffective for not challenging the Defendants two certified prior convictions based on a memorandum from then-Attorney General Eric H. Holder, Jr., ("Holder Memo"). This issue will be discussed with Claim Eleven below.

fails to perform those acts which clearly appear to be futile or fruitless at the time the decision must be made." Garrett v. United States, 78 F.3d 1296, 1303, n.11 (8th Cir. 1996).[5]

[¶35]   As it relates to the Defendant's present claim, the Sixth Amendment guarantees criminal defendants the right to a trial by an impartial jury. U.S. Const. Amend. VI. It is well-established the Sixth Amendment's guarantee to a jury trial does not include a guarantee to a bench trial. See Singer v. United States, 380 U.S. 24, 36 (1965) ("[T]here is no federally recognized right to a criminal trial before a judge sitting alone, but a defendant can . . . in some instances waive his right to a trial by jury."). For a defendant to receive a bench trial in a criminal case requiring trial by jury, three things must be met: (1) the defendant waives his jury trial right in writing; (2) the United States consents; and (3) the court approves. Fed. R. Crim. P. 23(a). If any one of those three factors is missing, there cannot be a bench trial in lieu of a jury trial. See id.

[¶36]   Assuming the Defendant requested a bench trial and Attorney Toay refused to file such a request, pursuing a bench trial would have been futile. As noted by the United States, it has a policy not to consent to bench trials and it would not have consented to one in this case. Doc. No. 453, p. 47. Because Fed. R. Crim. P. 23(a) requires the United States' consent before permitting a bench trial, Attorney Toay's request would have been dead on arrival. In addition, the Court is hard pressed to believe the Defendant would have stipulated to any facts for trial in this matter. The record shows he refused to participate in his defense leading up to trial and had a contentious relationship with Attorney Toay. At trial, Attorney Toay put on a defense to challenge the United States' evidence supporting the conspiracy and firearm charge. It is inherently incredible and contrary to the record for the Defendant to now claim he would have stipulated to the facts when

---

[5] The Eighth Circuit has also found counsel's failure to pursue a suppression motion counsel reasonably believed to be futile does not rise to the level of ineffective assistance of counsel. Anderson v. United States, 762 F.3d 787, 794 (8th Cir. 2014).

the record establishes he did not, and he refused to cooperate with Attorney Toay throughout the case. See 28 U.S.C. § 2255; Engelson, 86 F.3d at 240.

[¶37]   Assuming Attorney Toay advised the Defendant against pursuing a bench trial in this case, the advice did not fall below an objectively reasonable standard of representation because pursuing a bench trial would have been futile. Even if Attorney Toay did provide deficient representation, the Defendant has failed to establish the outcome would have been different had Attorney Toay requested a bench trial. Again, this is because the request would have been futile as the United States would not have consented to the bench trial.[6] See Garrett, 78 F.3d 1303, n.11 (noting there is no ineffective assistance of counsel when the action complained of by a defendant would have been futile).[7]

[¶38]   In short, there is nothing in the record or the Defendant's Motion regarding Claim Three that convinces the Court Attorney Toay was ineffective regarding the alleged request for a bench

---

[6] The Defendant claims he was prejudiced by Attorney Toay not requesting a bench trial because he would have been afforded an acceptance of responsibility reduction under U.S.S.G. § 3E1.1. Under the cases cited by the Defendant, he would have had to stipulate to each and every fact of the offenses and receive a bench trial to preserve a purely legal issue to potentially receive a two-level reduction for acceptance of responsibility under § 3E1.1. See, e.g., United States v. Rogers, 129 F.3d 76, 78 (2d Cir. 1997). By the terms of his argument, he would not have stipulated to all of the facts relating to the offenses to preserve a legal issue. He claims to have wanted to stipulate to all of the facts except the drug quantity. He would still not be entitled to a reduction had Attorney Toay been successful in any request for a bench trial. See id. (noting a § 3E1.1 two-level reduction was appropriate when the Defendant agreed to a bench trial on stipulated facts).

[7] The Defendant ultimately received the review he claims to have requested, but in the form of a decision on the sufficiency of the evidence. See Doc. No. 344 (Order Denying Defendant's Motion for New Trial). In ruling on the sufficiency of the evidence claim, Judge Erickson held "Delacruz points to contradictory evidence presented at trial. Witness credibility was an issue squarely in front of the jury. The court has reviewed the evidence in the record and finds there is overwhelming evidence to support the verdict on each count." Doc. No. 344, p. 2. This supports the conclusion that the Defendant would have been convicted even if he received a bench trial and further supports a finding the Defendant was not prejudiced.

trial or that the Defendant suffered prejudice by Attorney Toay's alleged failure. Accordingly, the Defendant's Motion to Vacate under 28 U.S.C. § 2255 on Claim Three is **DENIED**.

### e. Claim Four: Ineffective Assistance of Counsel Regarding the Defendant's Right to Testify

[¶39]   The Defendant claims Attorney Toay failed to advise him about his right to testify at trial and, if he had known, he would have provided exculpatory testimony. The United States argues the record clearly establishes Attorney Toay was not deficient in his performance in this regard because the Defendant knew of his right to testify and freely chose to refrain from providing testimony at trial. As for prejudice, the United States argues the Defendant only offers the conclusory allegation that he would have provided exculpatory testimony without providing any indication what that testimony would have been. The Court agrees with the United States.

[¶40]   It is well-established a defendant in a criminal trial has the right to testify on his own behalf. Rock v. Arkansas, 483 U.S. 44, 51 (1987); Frey v. Schuetzle, 151 F.3d 893, 898 (8th Cir. 1998). The Supreme Court has stated this right is "'essential to due process of law in a fair adversary process.'" Rock, 483 U.S. at 51 (quoting Faretta v. California, 422 U.S. 806, 819, n.15 (1975)). "The right to testify is also found in the Compulsory Process Clause of the Sixth Amendment, which grants a defendant the right to call 'witnesses in his favor.'" Id. at 52. Even though a defendant has a fundamental right to testify on his own behalf, that right may be waived. Frey, 151 F.3d at 898 (quoting United States v. Bernloehr, 833 F.2d 749, 751 (8th Cir. 1987) ("Because the right to testify is a fundamental constitutional guarantee, only the defendant is empowered to waive the right.")). The defendant's waiver "must be made knowingly and voluntarily." Id. A knowing and voluntary waiver can be found "based on a defendant's silence when his counsel rests without calling him to testify." Id.

[¶41]   The record in this case clearly establishes (1) the Defendant knew of his right to testify and (2) knowingly and voluntarily gave up that right. At trial, the Court conducted a thorough discussion with the Defendant outside the presence of the jury regarding his desire to testify. Doc. No. 308, pp. 491-92. When Attorney Toay indicated he did not intend to call the Defendant as a witness, the Court questioned the Defendant on this matter. Id. at 491. The Court then informed the Defendant of his right to testify and the collateral consequences of choosing or not choosing to do so. Id. at 491-92. The Court then asked, "Your lawyer's indicated that you've elected to remain silent. Is that, in fact, your intention." Id. at 492. The Defendant responded, "[t]hat is correct." Id. The Court further instructed the Defendant that if he changed his mind once his attorney was done with his last witness, he still had the opportunity to change his mind and testify. Id. Again, the Defendant indicated he understood. Id. The Defendant also indicated (1) he made the decision of his own free will and (2) no one forced him into making the decision. Id. The Defendant called one witness and at the close of his case, he did not testify. See id. at 492-505.

[¶42]   Even assuming Attorney Toay did not discuss the Defendant's right to testify with the Defendant prior to trial, the record clearly establishes the Defendant knew of his right to testify, knew the consequences of his decision, and freely chose to waive his right to testify without coercion from any other individual. In addition, the Defendant was told he could change his mind at the close of the last witness for his case. He chose to remain silent. On this basis alone it is evident he freely and voluntarily waived his right to testify. Frey, 151 F.3d at 989 ("We have previously held that a knowing and voluntary waiver of the right may be found based on a defendant's silence when his counsel rests without calling him to testify.").

[¶43]   Likewise, the Defendant has only provided conclusory statements he would have provided exculpatory testimony on his own behalf. He has not provided any indication what that testimony

may be. Even if he did have exculpatory testimony, when reviewing the sufficiency of the evidence at trial, the Court concluded the evidence against the Defendant was "overwhelming." Doc. No. 344, p. 2 ("The court has reviewed the evidence in the record and finds there is overwhelming evidence to support the verdict on each count."). Likewise, the Eighth Circuit found there was sufficient evidence in the record, "Although there were minor inconsistencies, the government's **numerous witnesses** told a consistent narrative as to Delacruz's role in the drug distribution conspiracy, and his use of a gun in the drug-related assault on Ellingson." United States v. Delacruz, 865 F.3d 1000, 1006 (8th Cir. 2017) (emphasis added). His conclusory allegation provides no suggestion how his testimony would have provided exculpatory information to exonerate him of the charges. See Voytik v. United States, 778 F.2d 1306, 1308 (8th Cir. 1985) (when a petition consists only of conclusory allegations without specific support by factual allegations and is incredible in light of the record, it is insufficient to overcome the barrier to an evidentiary hearing on the petition).

[¶44]   Having reviewed the entire record in this matter, the Court concludes the Defendant has failed to make a showing Attorney Toay provided deficient assistance of counsel or that the Defendant was prejudiced because of any perceived deficiency by Attorney Toay. Accordingly, the Defendant's Motion to Vacate under 28 U.S.C. § 2255 as to Claim Four is **DENIED**.

### f.  Claim Five: Ineffective Assistance of Counsel Regarding the Defendant's Right to Self-Representation

[¶45]   The Defendant claims Attorney Toay and/or Attorney Sandberg were ineffective because he failed to advise the Defendant of his right to represent himself, claiming there was a violation of Faretta v. California, 422 U.S. 806 (1975). The United States argues this issue is not a Faretta claim but is an attempt to relitigate the Court's repeated denials of the Defendant's request for a new attorney. To that end, the United States argues Defendant's Claim Five fails for three reasons:

(1) the law of the case doctrine bars re-litigation of this claim; (2) Attorney Toay did not provide ineffective assistance of counsel on this claim; and (3) Attorney Sandberg did not provide ineffective assistance of counsel. The Court agrees with the United States.

### (1) The Law of the Case Doctrine Precludes Claim Five

[¶46]   The Defendant argues he did not receive a new attorney after lodging several complaints against Attorney Toay leading up to trial. To that end, he claims <u>Faretta</u> supports his request because he should not have been forced to accept an attorney against his will. The United States argues the ruling on the Defendant's direct appeal governs this issue and forecloses any relief under Claim Five.

[¶47]   The law of the case doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." <u>Morris v. American Nat'l Can Corp.</u>, 988 F.2d 50, 52 (8th Cir. 1993). The reason for this doctrine is to prevent a party from re-litigating issues that have been settled in the case. <u>First Union Nat. Bank v. Pictet Overseas Trust Corp., Ltd.</u>, 477 F.3d 616, 620 (8th Cir. 2007). This protects "'the settled expectations of parties, ensuring uniformity of decisions, and promoting judicial efficiency.'" <u>Id.</u> (quoting <u>Little Earth of the United Tribes, Inc. v. United States Dep't of Hous. & Urban Dev.</u>, 807 F.2d 1433, 1441 (8th Cir. 1986)). In other words, the law of the case doctrine "governs the preclusive effect of an earlier decision 'within a single action.'" <u>Currier v. Virginia</u>, 138 S.Ct. 2144, 2154 (2018) (quoting 18A C. Wright & A. Miller, Federal Practice and Procedure § 4434 (2d ed. 2002)). This doctrine applies to appellate decisions. <u>First Union Nat. Bank</u>, 477 F.3d at 620.

[¶48]   The Eighth Circuit discussed the Defendant's request for a new trial based on the repeated

denial of his requests for substitution of counsel. Delacruz, 865 F.3d 1007-09. In concluding, the

Eighth Circuit held:

> The record clearly reveals that Delacruz's unwillingness to communicate with Toay
> before trial resulted from Delacruz's refusal to move beyond a meritless sentencing
> issue and prepare a trial defense. The district court repeatedly and carefully
> considered Delacruz's complaints and did not abuse its discretion in denying the
> motions to substitute counsel. "The focus of the justifiable dissatisfaction inquiry
> is the adequacy of counsel in the adversarial process, not the accused's relationship
> with his attorney." Barrow, 287 F.3d at 738. Justifiable dissatisfaction "does not
> include a defendant's frustration with counsel who does not share defendant's
> tactical opinions but continues to provide zealous representation." Id. (citation
> omitted); see United States v. Trevino, 829 F.3d 668, 674 (8th Cir. 2016); [United
> States v.] Taylor, 652 F.3d [905,] 908 [(8th Cir. 2011)]. Where a lack of
> communication results from a defendant's refusal to speak with counsel, rather than
> counsel's ineffectiveness, the defendant's stonewalling does not entitle him to new
> counsel. See Taylor, 652 F.3d at 909; [United States v.] Barrow, 287 F.3d [773,]
> 738 [(8th Cir. 2002)]. This is particularly true where granting the motion would
> require a continuance or delay the trial. See Barrow, 287 F.3d at 738.

Id. at 1008-09. The Eighth Circuit reviewed the entire record and concluded Attorney Toay

provided the Defendant with zealous representation despite the Defendant's repeated refusal to

speak with counsel. Id.

[¶49]   It is clear from reviewing Claim Five that the Defendant does not actually complain he was

never informed of his right to self-representation. His claim is yet another attempt to argue he

should have been provided new counsel. In other words, he urges the Court to order a new trial for

the exact same reasons rejected by the Eighth Circuit. The Defendant is precluded from asserting

Claim Five because the Eighth Circuit has found there was no error in the Court's repeated denial

of the Defendant's requests for new counsel. Id. The dissatisfaction with Attorney Toay was

grounded in the Defendant's choice not to communicate with Attorney Toay. Id. Because the

Eighth Circuit has directly decided the substance of the Defendant's Claim Five, the law of the

case prohibits this claim. See First Union Nat'l Bank, 477 F.3d at 620 (law of the case doctrine prohibits relitigating decided issues and applies to appellate court decisions in the same action).

[¶50]   Accordingly, because the Eighth Circuit's opinion in the Defendant's direct appeal squarely decided the issue raised in Claim Five, the Defendant's Motion to Vacate under 28 U.S.C. § 2255 Claim Five is **DENIED**.

### (2) Attorney Toay Did Not Provide Ineffective Assistance of Counsel Relating to Defendant's Right to Self-Representation

[¶51]   Even if the law of the case doctrine did not govern this issue, the Defendant's claim fails on the merits. The Defendant argues the Court should have dismissed Attorney Toay from representing the Defendant after repeated outcry from the Defendant. Doc. No. 428, p. 11. To that end, the Defendant contends Attorney Toay refused to file motions, Attorney Toay generally provided ineffective assistance of counsel because Attorney Toay provided his candid assessment of the case and the Defendant should have been given a new attorney, and, importantly here, Attorney Toay allegedly failed to request a Faretta hearing.   The United States contends (1) Attorney Toay competently and respectfully represented the Defendant; (2) the Court addressed the meritless motions the Defendant wanted Attorney Toay to file; (3) Attorney Toay repeatedly attempted to engage the Defendant to prepare for trial or enter plea negotiations; and (4) the Defendant may have disliked the assessment provided by Attorney Toay, but Attorney Toay was nevertheless still doing his job. Doc. No. 453, pp. 58-63.

[¶52]   Arguably, the Defendant's Claim Five pertains to whether he should have been advised he could represent himself. The Court agrees with the United States analysis of the Defendant's factual assertions in Claim Five but will limit its analysis here to the specific issue raised by the Defendant: whether Attorney Toay was ineffective because of a Faretta violation. To this argument, the United States contends the Defendant fails to assert a viable Faretta claim because

he did not "clearly and unequivocally" assert his right to self-representation. Doc. No. 453, p. 63 (quoting Bilauski v. Steele, 754 F.3d 519, 521 (8th Cir. 2014)). The Court agrees with the United States.

[¶53]   It is undisputed a defendant has "a clearly established Sixth Amendment right to self-representation." Jones v. Norman, 633 F.3d 661, 666 (8th Cir. 2011). "The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants the accused personally the right to make his defense." Faretta, 422 U.S. at 819.  A criminal defendant should not be forced to have an attorney. Jones, 633 F.3d at 666. In order to represent himself, however, a defendant must knowingly and voluntarily waive his right to be represented by counsel. Id. (citing Faretta, 422 U.S. at 817-18). Before inquiring into whether a defendant should be afforded the opportunity to waive his right to self-representation, a defendant must make "a clear and unequivocal request to represent himself." United States v. Edelmann, 458 F.3d 791, 808 (8th Cir. 2006).

[¶54]   The record is silent regarding any indication the Defendant desired to represent himself. His claim the Court failed to remove Attorney Toay in violation of Faretta is, on the record, baseless. The record clearly supports the contention the Defendant wanted a new attorney. See Doc. Nos. 124, 125, 127, 137, 144, 145, 155, 193, 195, 341, 342, 373. It is clear the Defendant did not appreciate Attorney Toay's candid assessment of his case. It is equally clear the Defendant desired a new attorney to represent him. It is contrary to the record for the Defendant to now claim he wanted to represent himself all along and Attorney Toay was ineffective in this regard. As the Court found numerous times and to which the Eighth Circuit agreed, Attorney Toay provided zealous advocacy for the Defendant despite the Defendant's repeated refusal to communicate with his attorney. See Delacruz, 865 F.3d 1007-09. Attorney Toay was not ineffective for not requesting a Faretta hearing as implied by the Defendant. See United States v. Atkins, No. 1:18-cv-01054,

2019 WL 3782826 at *4 (W.D. Ark. June 10, 2019) ("Accordingly, on the face of his motion, Atkins did not 'clearly and unequivocally' assert his right to self-representation; **in fact, he apparently wanted to still be represented**. Because Atkins did not meet the standard for a Faretta hearing, Atkins's counsel was not required to request such a hearing because such a hearing would have been meritless." (emphasis added)). Because the record is clear the Defendant expressly desired to be represented, his attorney should not be held to a standard to divine the secret desires of his client when the record supports only one conclusion on this issue: the Defendant wanted counseled representation. Requesting a Faretta hearing would therefore be meritless. See Thomas v. United States, 951 F.2d 902, 905 (8th Cir. 1991) (*per curiam*) ("Counsel's failure to raise these meritless issues does not constitute ineffective assistance.").

[¶55]   Finally, Attorney Toay also advised the Defendant of his right to represent himself. Doc. No. 453-1, ¶ 11 (Attorney Toay noting he would advise the Defendant of his right to represent himself when the Defendant would get frustrated with Attorney Toay). This is consistent with the record before the Court in which the Defendant repeatedly had the opportunity to request self-representation, but only ever requested a new attorney. Attorney Toay was not, therefore, ineffective for not advising the Defendant of his right to self-representation because the Defendant's claim to the contrary is inherently incredible in light of the lengthy record in this case. See 28 U.S.C. § 2255; Engelson, 86 F.3d at 240. Accordingly, the Defendant's Claim Five as it relates to ineffective assistance of counsel of Attorney Toay regarding self-representation is **DENIED**.

### (3) Attorney Sandberg Provided Effective Assistance of Counsel

[¶56]   The Defendant also seems to argue Attorney Sandberg provided ineffective assistance of counsel by withdrawing from representing the Defendant due to numerous conflicts with potential

government witnesses. The United States argues this claim is contrary to the established record in this case. The Court agrees with the United States.

[¶57]   Attorney Sandberg was originally retained by the Defendant to represent him in this matter. See Doc. No. 7. Attorney Sandberg appeared on the Defendant's behalf at his Initial Appearance on July 28, 2014. See id. On November 7, 2014, Attorney Sandberg filed a Motion to Withdraw as Counsel for the Defendant. Doc. No. 83. As grounds for withdrawing, Attorney Sandberg stated he "has a conflict in this case with several prospective and potential Government witnesses whom Sandberg has previousl[ly] represented as clients in other matters. It would place Attorney Sandberg in a serious ethical conundrum to continue to represent Mr. DeLaCruz in this matter." Id. The Motion was signed by both Attorney Sandberg and the Defendant. Id. A brief in support of the motion was filed, providing more detailed explanation of the conflicts. Doc. No. 88. The Defendant and Attorney Sandberg signed the brief in support. Id. at p. 4.

[¶58]   The Court finds no error or ineffective assistance of counsel in Attorney Sandberg withdrawing from representing the Defendant in this matter due to the conflict. There is nothing in the record that supports the Defendant's implication that Attorney Sandberg was untruthful. Attorney Sandberg submitted an affidavit, sworn under oath, as to the reasons for withdrawing from representing the Defendant. The Defendant's unsworn conclusory allegations to the contrary fail to show how Attorney Sandberg's performance was in any way deficient or that he was prejudiced as required under Strickland, 466 U.S. at 690. In fact, the record shows the Defendant consented to the withdrawal by signing the Motion and brief in support. The Defendant also never objected to the withdrawal.

[¶59]   Accordingly, the Defendant's Claim Five for ineffective assistance as it relates to Attorney Sandberg's withdrawal from the case is **DENEID**.

### g. Claim Six: Ineffective Assistance of Counsel Regarding Attorney Toay Not Challenging the Racial Composition of the Jury

[¶60]   The Defendant contends Attorney Toay was ineffective by failing to challenge the racial makeup of the jury under the Sixth Amendment. To effectuate this alleged failure, the Defendant claims Attorney Toay should have but failed to investigate the jury selection plan utilized by the United States District Court for the District of North Dakota. According to the Defendant, had attorney Toay done so, he would have discovered Hispanics, Native Americans, and homeless are underrepresented due to North Dakota having "some of the most restrictive voting laws in the United States." Doc. No. 433, p. 10. In other words, the Defendant alleges Attorney Toay was ineffective because he did not raise a "fair cross section" challenge the jury selection process under Duren v. Missouri, 439 U.S. 357 (1979).

[¶61]   The United States contends the Defendant failed to sustain his burden of showing ineffective assistance of counsel in this regard. According to the United States, the Defendant has failed to offer any evidence Hispanics were systematically excluded from the jury selection process or that they have difficulty registering to vote in presidential elections. In short, the United States avers the Eighth Circuit and the District Court have routinely denied challenges to the jury selection plan for the District of North Dakota. See Doc. No. 453, pp. 67-70. The Court agrees with the United States. Based on the record, Attorney Toay was neither deficient in his performance nor was the Defendant prejudiced by Attorney Toay's decision not to raise a Duren challenge.

[¶62]   Attorney Toay was not deficient in his performance because Defendant has failed to show Attorney Toay's decision not to raise a Duren challenge fell below the objectively reasonable standard under Strickland. The Sixth Amendment prohibits a party from excluding potential jurors on the basis of race. Batson v. Kentucky, 746 U.S. 79, 86 (1986). Likewise, the Sixth Amendment

prohibits the Court from "systematically excluding" potential jurors due to a protected status, such as race. <u>Duren v. Missouri</u>, 439 U.S. 357, 360 (1970). The Supreme Court has provided three element a defendant must show to be successful in challenging the racial makeup of a jury:

> In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

<u>Duren v. Missouri</u>, 439 U.S. 357, 364, (1979); <u>see also</u> <u>United States v. Rodriguez</u>, 581 F.3d 775, 790 (8th Cir. 2009) (quoting the same). In order to show underrepresentation was due to systematic exclusion, the Defendant must "show minorities faced obstacles to voting in North Dakota." <u>Rodriguez</u>, 581 F.3d at 790.

[¶63]   The Court does not need to address the first two elements because the Defendant has failed to show there is a "systematic exclusion" of Hispanics and Native Americans in the District of North Dakota's jury selection plan. The District of North Dakota's jury plan provides:

> There exists a permanent, centralized electronic data base of voters, known as the central voter file, established with the Office of the North Dakota Secretary of State and county auditors linked together by a centralized statewide system. The county auditor is chief custodian of the central voter file records in each county. The Secretary of state is responsible for maintaining the central voter file. N.D.C.C. § 16.1-02-01.
>
> The general election fixed by North Dakota statute for the first Tuesday after the first Monday in November of each presidential election year is an election in which statewide voting for state and federal offices occurs. N.D.C.C. § 16.1-13-01. The source of names of prospective grand and petit jurors shall be the list of actual voters at such presidential election as contained in the central voter file.

<u>Plan for Random Jury Selection</u>, § 2 (Jan. 1, 2017). In short, the list of voters from the presidential election year is the Court's pool of individuals drawn for jury selection. <u>Id.</u>

[¶64]   Attorney Toay's performance was not deficient when he did not raise a <u>Duren</u> challenge to the District's jury selection plan because the plan has been repeatedly upheld by the Eighth Circuit.

The District's jury selection plan has withstood numerous similar Duren challenges. In Rodriguez, the Eighth Circuit rejected a Duren challenge to the District's Plan for Random Jury Selection because the defendant in Rodriguez "offered no proof that minorities in North Dakota faced obstacles to voting." Rodriguez, 581 F.3d at 790. In United States v. Greatwater, the Eighth Circuit held drawing prospective jurors from the presidential election voter registration did not constitute systematic exclusion absent a showing "Native Americans, in particular, face obstacles to registering to vote in presidential elections."  356 F.3d 908, 911 (8th Cir. 2004) (per curiam). In United States v. Morin, the Eighth Circuit likewise held, "[a]bsent proof that Native Americans, in particular, face obstacles to voter registration in presidential elections, '[e]thnic and racial disparities between the general population and jury pools do not by themselves invalidate the use of voter registration lists[8] and cannot establish the 'systematic exclusion' of allegedly under-represented groups.'" 338 F.3d 838, 844 (8th Cir. 2003) (footnote 8 added) (quoting United States v. Sanchez, 156 F.3d 875, 879 (8th Cir. 1998)); see also United States v. Garcia, 674 F. App'x 585, 587 (8th Cir. 2016) (per curiam) (unpublished) ("Garcia has not attempted to establish that Native Americans faced obstacles to registering to vote in the presidential election, and he thus has failed to show that Native Americans were systematically excluded from the jury selection process."). Given these repeated affirmances of the District's jury selection plan, it was reasonable for Attorney Toay not to raise a Duren challenge to the jury selection process.

---

[8] In North Dakota, registration is not required to vote. Rather, North Dakota sets forth a list of qualifications needed to vote. N.D.C.C. § 16.1-01-04. To qualify, an individual must be (a) a United States citizen; (b) at least eighteen years old; and (c) a North Dakota resident "who was resided in the precinct at least thirty days immediately preceding any election." N.D.C.C. § 16.1-01-04(1). North Dakota does, however, keep a "central voter file" on record with the county auditor. See generally N.D.C.C. ch. 16.1-02. It is the "central voter file" this District uses in its random jury selection plan. Plan for Random Jury Selection, § 2 (Jan. 1, 2017).

[¶65]   Likewise, even if Attorney Toay's performance was deficient in this respect, the Defendant has failed to show the outcome of the jury selection would likely have been different under the circumstances. Just as in each of the cases cited above, the Defendant has not provided any evidence Hispanics, Native Americans, or homeless individuals each particularly faced obstacles to registering to vote in the presidential elections. See Rodriguez, 581 F.3d at 790. In other words, he has not alleged sufficient facts to show the outcome of the jury selection process would have been different because the jury selection plan is valid under Eighth Circuit precedent. See id.

[¶66]   Accordingly, the Defendant's Claim Six is **DENIED**.

### h.   Claim Seven: Ineffective Assistance of Counsel Regarding Withdrawal from Conspiracy Defense

[¶67]   Claim Seven actually contains four separate claims of ineffective assistance of counsel. First, the Defendant argues Attorney Toay was ineffective for failing to request an informant instruction. Doc. No. 435, p. 7. Second, the Defendant argues Attorney Toay was ineffective for failing to request a buyer-seller instruction. Id. Third, the Defendant contends Attorney Toay was ineffective by conceding the Defendant participated in the conspiracy. Id. Finally, the Defendant asserts Attorney Toay was ineffective by not researching the law relating to a potential withdrawal from the conspiracy defense. Id. The Court will address each claim in turn.

### (1) Informant Instruction

[¶68]   The Defendant first argues Attorney Toay was ineffective because he failed to request an informant jury instruction. Doc. No. 435, p. 7-8. The Defendant claims, "[a]bsent the informant instruction, the jury was allowed to reach a verdict based on information they felt as they saw fit, without consideration that the informant may generate the information as they see fit under any circumstance to meet their agreement with the government." Id. at p. 7.

[¶69]   The United States argues Attorney Toay was not ineffective because an informant instruction would have been inappropriate since the United States did not utilize an informant in proving its case. To that end, the United States avers the Defendant misunderstands the difference between an informant instruction and instructions relating to the credibility of cooperating witnesses. Doc. No. 453, p. 71. According to the United States, because an informant instruction was inappropriate under the circumstances, had Attorney Toay requested one, it would have been denied and the outcome would have remained the same. Id. at pp. 72-73. The Court agrees with the United States.

[¶70]   There is a difference between an "informant" and a cooperating witness or accomplice. Informants are typically paid or given some other benefit by the United States for the testimony. See United States v. Ridinger, 805 F.2d 818, 820-21 (8th Cir. 1986) (approving use of an instruction defining an informer as someone who "has an arrangement with the government under which she gets paid for providing information to the government"); see also Eighth Circuit Model Criminal Jury Instruction 4.06 (defining informant as one who receives payment or other benefit from the United States for their information or testimony); United States v. Lee, 506 F.2d 111, 122-23 (D.C. Cir. 1974) (noting an informant is typically paid or receives a benefit from the government for their information). The jury in this case was instructed a cooperating witness was one who "hope[d] to receive a reduced sentence on criminal charges pending against them in return for their cooperation with the prosecution in this case." Doc. No. 225, p. 25; see also Eighth Circuit Model Criminal Jury Instruction 4.05B (defining cooperating witness).

[¶71]   A review of the record shows the United States did not introduce the testimony of an informant at trial. Although the United States' case contained testimony of cooperating witnesses who identified the Defendant's role in the conspiracy, there was no evidence of an informant in

the technical sense. At trial, the Jury was instructed both on the credibility of cooperating witnesses and on the testimony under the grant of immunity of a plea bargain. Doc. No. 225, pp. 22-23. The jury was instructed to consider the testimony of the cooperating witnesses and those testifying under a grant of immunity of plea bargaining and to give such testimony the weight the jury believes it deserves. Because the United States did not introduce evidence of an informant at trial, Attorney Toay did not provide the Defendant deficient performance when he did not ask for an informant instruction. See Rodriguez v. United States, 17 F.3d 225, 226 (8th Cir. 1994) (per curiam) ("[C]ounsel's failure to advance a meritless argument cannot constitute ineffective assistance.").

[¶72]  Likewise, the Defendant did not suffer prejudice by Attorney Toay not requesting an informant instruction. The outcome would have been the same. No informant instruction would have been given because the United States did not call an informant as a witness at trial. Indeed, the jury was properly instructed on their duty to weigh the credibility of cooperating witnesses, including those who may get a reduced sentence or a grant of immunity for their testimony, and give it the weight the jury believed the testimony deserved. See United States v. Worthing, 434 F.3d 1046, 1050 (8th Cir. 2006) (quoting United States v. Drews, 877 F.2d 10, 12-13 (8th Cir. 1989)) (noting a proper instruction on cooperating witnesses reminds the jury to give such testimony "such weight as they thought it deserved"). The Court has reviewed the record and concludes the jury was properly informed regarding the credibility of cooperating witnesses. See Doc. No. 225, pp. 22-23. The Defendant has failed to establish the jury was not properly instructed in this matter and, therefore, he suffered no prejudice.

[¶73]  Accordingly, the Defendant's Claim Seven as it relates to the informant instruction is **DENIED**.

### (2) Attorney Toay Was Not Ineffective for Not Requesting a Buyer-Seller Defense or Instruction

[¶74]   The Defendant appears to argue he wanted Attorney Toay to put on a buyer-seller defense. Doc. No. 435, pp. 7-8 ("Mr. [D]elacruz requested that [A]ttorney [T]oay put a buyer-seller relationship defense, but his attorney only wanted him to plead guilty.").[9] The United States contends (1) this claim is time-barred and (2) the Defendant has failed to show a buyer-seller defense was appropriate under the circumstances. The Court agrees with the United States.

[¶75]   As set forth more fully below in Section III if this Order, the statute of limitations to bring new claims ran on January 28, 2019. The Defendant mentions this issue for the first time in his Supplement to his Motion to Vacate filed on June 11, 2019.[10] This issue is unrelated to any other ground asserted in his original Motion to Vacate and is, therefore, untimely as a matter of law. The Defendant provided no basis to equitably toll the statute of limitations on this ground.

[¶76]   Nevertheless, even considering the merits, the Defendant's claim fails.[11] "The buyer-seller instruction is inappropriate where 'there is evidence of multiple drug transactions, as opposed to a single, isolated sale.'" United States v. Conway, 8754 F.3d 580, 592 (8th Cir. 2014) (quoting United States v. Hester, 140 F.3d 753, 757 (8th Cir. 1998)). In other words, a buyer-seller defense

---

[9] The United States construes the Defendant's argument as a failure to request a buyer-seller instruction. The Court has stated the Defendant's presentation of his argument. The analysis does not change.

[10] The Supplement was docketed on June 28, 2019, but it appears the Defendant placed it in the prison mail system on June 11, 2019. In either case, this ground is untimely.

[11] The Court doubts the Defendant is actually asserting Attorney Toay deprived him of a viable buyer-seller defense. This is because the buyer-seller defense is minimally mentioned in his supplement whereas the remaining assertions focus on the lack of an informant instruction and withdrawal from the conspiracy. See Doc. Nos. 433, p. 12 (memorandum in support of Motion to Vacate under § 2255 arguing Attorney Toay failed to raise a withdrawal defense); 435, pp. 7-8 (Supplement to Motion to Vacate under § 2255 arguing counsel's failure to request an informant instruction). Despite this, the Defendant has mentioned it and the court will give it the review it deserves.

instruction is appropriate when the evidence tends to suggest a single, isolated sale of a minimal amount of drugs tending to indicate personal use. Id. (quoting United States v. Cordova, 157 F.3d 587, 597 (8th Cir. 1998)). When the evidence suggests large quantities of drugs and many interactions between users and dealers over a period of time, the instruction is not appropriate. Id. There is no buyer-seller defense available when the evidence shows many drug transactions involving a defendant over a lengthy period of time. Id.

[¶77]   A review of the trial record establishes a buyer-seller defense would have been wholly inappropriate in this case. Multiple witnesses provided testimony of the Defendant's role in the conspiracy. According to Anthony "Tony" Farrell, the Defendant supplied him with quantities of methamphetamine on a weekly basis from the summer of 2013 to the spring of 2014. Doc. No. 306, pp. 183-84. Tony Farrell estimated the Defendant provided him a total of eight to ten ounces during that timeframe. Id. at 184. The Defendant also acted as a middleman between the source of drugs and Farrell. Id. at 184-85.

[¶78]   Brian McMahan knew the Defendant for about sixteen years in an on-again, off-again fashion. Doc. No. 307, pp. 51-52. In 2013 McMahan and the Defendant reconnected because of McMahan's drug problem. Id. at 52. The Defendant was McMahan's source of supply for methamphetamine. Id. at 53. McMahan observed the Defendant dealing drugs to other individuals, including Tony Farrell, Adam Wicks, and Kimberly Ratliff. Id. at 53, 55.

[¶79]   Bradley "Brad" Huard would buy his methamphetamine from Tony Farrell about twice a week around 2013 to 2014. Id. at 131-32. Huard would sometimes sell some of the methamphetamine he would get from Farrell. Id. at 132. Although Huard never saw Farrell get the methamphetamine from the Defendant, Farrell told Huard he did. Id. at 134. Huard also bought directly from the Defendant on a couple of occasions around 2014. Id.

[¶80]   Brian Noyes went to high school with the Defendant but reconnected with him in 2013. Id. at p. 142. At one point while the Defendant was doing some work for Noyes, the two used methamphetamine together. Id. at 143. The Defendant provided the methamphetamine. Id. After that, Noyes purchased methamphetamine from the defendant on a few other occasions, approximately six to eight other times. Id. at 144, 145.

[¶81]   Kimberly Ratliff was addicted to drugs since 2001. Id. at 162. During that time, she would also sell drugs. Id. She met the Defendant in early 2014 at Tony Farrell's mother's place. Id. at 163. Drugs quickly formed the basis for Ratliff's relationship with the Defendant. Id. at 164. They would use together. Id. at 165. The Defendant provided her the methamphetamine when they used together. Id. at 166. She received user quantities of methamphetamine from the Defendant on a couple of occasions. Id. at 165. The Defendant would give Ratliff methamphetamine and expected her to turn around and sell it for him. Id.  Ratliff, however, testified she did not pay him. Id.

[¶82]   Finally, at trial, Jessica Kirchoffner had last sold methamphetamine in 2014. Id. at 219. She would get her methamphetamine from Tony Farrell. Id. She sold around a pound for Farrell. Id. She met Farrell's source of supply and identified him as the Defendant. Id. at 219-220.

[¶83]   After a careful review of the record, the Court concludes Attorney Toay did not provide ineffective assistance of Counsel because any request for a buyer-seller defense or instruction would have been meritless and the Defendant did not suffer prejudice. The numerous witnesses above each implicated the Defendant in a significant drug distribution conspiracy in North Dakota. There is no evidence of a simple buyer-seller transaction in this case. Indeed, as noted by the Eighth Circuit, "the government's numerous witnesses told a consistent narrative as to Delacruz's role in the drug distribution conspiracy." Delacruz, 865 F.3d at 1006.

[¶84]   The Court likewise previously concluded there was "overwhelming evidence" to support the verdict of the drug conspiracy charge. Doc. No. 344, p. 2. Nothing has changed that conclusion. The evidence of multiple drug distribution transactions between the Defendant and others is overwhelming in the face of his claim Attorney Toay should have requested a buyer-seller defense instruction. Attorney Toay, therefore, did not provide ineffective assistance of counsel because requesting a buyer-seller defense would have been meritless and the Defendant has failed to establish he suffered any prejudice. <u>See</u> <u>Conway</u>, 8754 F.3d 592 (noting a buyer-seller instruction is "inappropriate" when there is evidence of multiple drug transactions over a period of time); <u>Thomas</u>, 951 F.2d at 905 ("Counsel's failure to raise these meritless issues does not constitute ineffective assistance.").

[¶85]   Accordingly, the Defendant's Claim Seven as it relates to Attorney Toay's alleged failure to request a buyer-seller defense is **DENIED**.

### (3) Attorney Toay Did Not Concede Defendant's Participation in Conspiracy

[¶86]   The Defendant contends Attorney Toay provided ineffective assistance of counsel by allegedly conceding the Defendant's role in the conspiracy at trial. The Defendant quotes from the trial transcript that Attorney Toay stated, "[a]t the end of the trial the judge is going to ask you to identify what the foreseeable quantity of meth was in the conspiracy and you're going to have an empty evidence table to use to make that determination." Doc. No. 435, p. 7 (quoting Doc. No. 306, p. 165). The United States argues this quotation is taken out of context and is not a concession of Defendant's participation in the conspiracy. Doc. No. 453, p. 78. The United States contends Attorney Toay "doggedly attacked" the United States' cooperating witnesses' credibility, inconsistencies, and their drug use. <u>Id.</u> at 79. According to the United States, the record is devoid

of any concession by Attorney Toay that the Defendant participated in the conspiracy. The Court agrees with the United States.

[¶87]   The Defendant takes this single sentence out of context, and it is not a concession the Defendant participated in the conspiracy. It is plain from a review of the record Attorney Toay was arguing against drug quantity when he made the allegedly prejudicial statement. See Doc. No. 233 (jury verdict requiring a finding on drug quantity). His point was the United States failed to introduce any physical evidence of methamphetamine, not that the Defendant was a participant in the conspiracy.[12] In fact, in closing, Attorney Toay put on a vigorous defense on the Defendant's behalf, arguing the United States failed to meet its burden in this case. Doc. No. 308, pp. 532-545. In this, Attorney Toay forcefully argued the lack of credibility of each of the witnesses and explained why they should not be believed. See id. The record plainly establishes Attorney Toay provided an effective defense for the Defendant and did not concede the Defendant's participation in the Conspiracy.

[¶88]   Even assuming Attorney Toay conceded the Defendant's participation in the conspiracy, the Court would still conclude he did not provide ineffective assistance of counsel on this issue. Strategic choices by counsel are "virtually unchallengeable" when they have occurred after a

---

[12] The Defendant raises an issue with Attorney Toay not requesting "any jury instruction requiring that the 500 grams of meth was a specific element of count one and had to be distributed or possessed with intent to distribute in a single transaction on any particular occasion with the time frame of count one." Doc. No. 435, p. 10. The Court has reviewed the jury instructions given and finds no error of law. The Defendant misappreciates the requirements for proving the drug quantity in a drug conspiracy such as here. As instructed, the jury was instructed they needed to conclude beyond a reasonable doubt the prosecution proved "a measurable amount of controlled substance was, in fact, knowingly and intentionally possessed with intent to distribute and distributed by the defendant." Doc. No. 225, p. 8 (Instruction No. 5). The verdict form provided the jury the options for finding specific drug quantities, whether 500 grams or more, fifty (50) grams or more, or simply an amount of methamphetamine. Doc. No. 233, pp. 1-2. Even assuming Attorney Toay did not request the instruction noted by the Defendant, the Jury was given the proper inquiries regarding drug quantity in the instructions and verdict form.

thorough investigation of law and facts. <u>Strickland</u>, 466 U.S. at 690. Even strategic choices made with a less than thorough investigation into the law and facts "are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." <u>Id.</u> at 691. The Eighth Circuit has held a concession of guilt of a lesser crime "was a reasonable tactical retreat rather than a complete surrender." <u>Lingar v. Bowersox</u>, 176 F.3d 453, 458-59 (8th Cir. 1999). In <u>Holder v. United States</u>, the Eighth Circuit concluded trial counsel's admission the defendant participated in the crime in order to gain credibility to argue a lack of intent or belief anyone would be harmed in the robbery was reasonable, especially in light of the overwhelming evidence of his participation in the crime. 721 F.3d 979, 989-90 (8th Cir. 2013).

[¶89]   The same holds true here. The Court previously found the evidence in support of the Defendant's guilt on the conspiracy charge was "overwhelming." Doc. No. 344, p. 2. If Attorney Toay conceded his participation here in arguing there was no evidence to support the drug quantity, it was plainly an effort to spare the Defendant of the mandatory minimum sentence for the methamphetamine conspiracy involving 500 grams or more of the drug. After reviewing the extensive record in this matter, the Court concludes even if Attorney Toay conceded Defendant's participation in the conspiracy, it would have been reasonable under the circumstances. <u>See</u> <u>Holder</u>, 721 F.3d at 989-90.

[¶90]   Accordingly, the Defendant's Claim Seven as it relates Attorney Toay's alleged concession of the Defendant's participation in the conspiracy is **DENIED**.

### (4) Withdrawal from Conspiracy

[¶91]   The Defendant argues Attorney Toay was ineffective because he did not research the law regarding the Defendant's withdrawal from the conspiracy. In making this argument, the Defendant contends Attorney Toay would have realized the Defendant should not have been

responsible for Farrell's drug distributions after the Defendant withdrew from the conspiracy. The United States contends the Defendant misconstrues the evidence. The Court agrees with the United States.

[¶92]   Once a criminal defendant joins an unlawful conspiracy, he is a responsible member in the agreement until he withdraws. Smith v. United States, 568 U.S. 106, 107 (2013) ("Upon joining a criminal conspiracy, a defendant's membership in the ongoing unlawful scheme continues until he withdraws."). "Withdrawal terminates the defendant's liability for postwithdrawal acts of his co-conspirators, but he remains guilty of the conspiracy." Id. at 111.

[¶93]   While there is evidence the Defendant withdrew from the conspiracy for a short time, he ultimately rejoined the conspiracy. Doc. No. 306, p. 185. At some point in August or September 2013, the Defendant took himself out of the situation and introduced Tony Farrell to the Defendant's source of supply. Id. The Defendant, however, was only out of the drug business for about one month before getting involved again. Id. at 187. Once reinvolved, he reinserted himself between Farrell and Robles (the Defendant's supplier). Id. at 188.

[¶94]   The Court has reviewed the record and, while the Defendant momentarily withdrew from the conspiracy, his period of withdrawal was minimal, and he was still responsible for most of the drugs Farrell claimed he received from Delacruz. Even assuming Attorney Toay did not thoroughly research this issue, there is nothing in the record to establish Attorney Toay's decision not to pursue the withdrawal defense was unreasonable because the evidence of the Defendant's participation and responsibility over the drugs in this case was overwhelming. See Strickland, 466 U.S. at 691 (noting strategic choices made with a less than thorough investigation into the law and facts "are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation").

[¶95]   Accordingly, the Defendant's Claim Seven regarding Attorney Toay's alleged failure to research the Defendant's withdrawal from the conspiracy is **DENIED**.

###### i.   Claim Eight: Ineffective Assistance of Counsel for Inadequate Preparation and Performance at Trial

[¶96]   The Defendant argues Attorney Toay was ineffective during the pretrial proceedings for (1) failing to file any pretrial motions; (2) failing to investigate any government witnesses, and (3) failing to make a defense. Doc. No. 433, p. 13. The United States contends the pretrial motions the Defendant wanted filed were addressed by the Court at the April 28, 2015, hearing. According to the United States, the Court informed the Defendant each of the pretrial motions he referenced were either unsupported by the evidence, not ripe, or contrary to the law. Doc. No. 453, p. 88. The United States also argues the record establishes Attorney Toay repeatedly implored the Defendant to assist in his defense and reassured the Defendant he would fully represent him. Next, the United States contends Attorney Toay zealously defended the Defendant despite the Defendant's repeated refusal to participate in his defense. Finally, the United States contends the record establishes Attorney Toay made a zealous defense of the Defendant. The Court agrees with the United States.

###### (1) Attorney Toay's Alleged Failure to File Pretrial Motions

[¶97]   Failure to file a pretrial motion is not necessarily ineffective assistance of counsel. Kimmelman v. Morrison, 477 U.S. 365, 384 (1986). As in all claims for ineffective assistance of counsel, counsel enjoys a presumption of competence. Id. The Defendant bears the burden of rebutting "this presumption by proving that his attorney's representation was unreasonable under the prevailing professional norms and that the challenged action was not sound strategy." Id. Reasonableness is "evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." Id.

[¶98]   The record betrays the Defendant's conclusory statement that Attorney Toay failed to file pretrial motions because, as noted by the United States, the Court addressed the pretrial motions issue before trial. The Court concluded the motions were either unsupported by the evidence, inappropriate to raise before trial, or contrary to the law. See Doc. No. 373, pp. 3-15. Defendant first raised an ineffective assistance of counsel claim the Court concluded was not ripe. Id. at pp. 4-5. The Court considered the Defendant's Crawford challenge "ethereal" or potentially appropriate in the context of trial. Id. at pp. 5-6.

[¶99]   He next wanted to suppress witnesses' ability to testify at trial. Id. at p. 6. Mr. Toay explained he did not identify any legal issues regarding the evidentiary issues raised because it was a case devoted almost entirely to witness statements. Id. at p. 7. Ultimately, Attorney Toay and the Court were left perplexed with precisely what the Defendant wanted with this motion. Id. ("THE COURT: And I'm just going to tell you that the motion was no more enlightening than what I described. If I had any better idea of what he was asking to suppress, I would have asked."). The Defendant attempted to clarify he was objecting to certain enhancements, but the Court stated that was not what the Defendant raised. Id. at p. 8. Ultimately, the Court denied the Defendant's request because there was no evidence being sought to be suppressed by the Defendant. Id. The Court reasoned there was no process to require witnesses to testify prior to trial, so the challenge was inappropriate. Id. at pp. 8-9. Attorney Toay affirmed he had explained the same reasoning to his client for not filing the motion and the issues can be addressed in the course of trial. Id. at p. 9 ("That's basically the same conversation I had with my client, was that the issue of the credibility will have to be decided at trial. And any hearsay issues that arise at trial we would address at trial because we don't know what's going to be said until it's said, and the witness will be there for cross-examination.").

[¶100] The Defendant also indicated he wanted to challenge the sufficiency of the Indictment. Id. at p. 10. The Court informed him such challenges are "exceptionally difficult" and the only way to prove such a claim is to show the "grand jury in some fashion was either tampered with, the indictment is the product of fraud, or the grand jurors were involved in misconduct." Id. Attorney Toay averred the Defendant believed the witnesses were lying. Id. at p. 11. The Court concluded those issues are for trial. Id.

[¶101] The Defendant also wanted to challenge the validity of his certified prior convictions. Id. at p. 12. Attorney Toay informed the Court he did not believe there could be a challenge because the convictions are more than five years old. Id. Because they are valid convictions, Attorney Toay concluded there was no basis to challenge them. Id. The Court explained why the motion is meritless because (1) the Defendant has not shown bad faith on the part of the prosecution and (2) the request was not ripe because the Defendant was not convicted at that point. Id. at p. 13.

[¶102] Finally, the Defendant wanted a trial continuance because he did not believe the case was ready for trial. Id. at p. 14. Attorney Toay asserted he and the United States were ready for trial. Id. at p. 15. The Court denied the continuance for having "no basis." Id.

[¶103] Putting all of this together, the Court concludes Attorney Toay was not ineffective when he did not file pretrial motions. In addition, the current motion does not identify any additional motions the Defendant believes were appropriate to address before trial. Likewise, Attorney Toay's decision not to file the motions did not cause the Defendant to suffer prejudice because the Court addressed each of the issues the Defendant wanted raised and concluded they were largely inappropriate in the pretrial context or contrary to established law. See id. at pp. 3-15.

[¶104] Accordingly, The Defendant's Motion to Vacate under 28 U.S.C. § 2255 for failing to file pretrial motions is **DENIED**.

**(2) Attorney Toay's Alleged Failure to Investigate Government Witnesses**

[¶105] The Eighth Circuit has held "that failing to interview witnesses or discover mitigating evidence may be a basis for finding counsel ineffective within the meaning of the Sixth Amendment right to counsel." Kramer v. Kemna, 21 F.3d 305, 309 (8th Cir. 1994). If there was a failure to interview witnesses, that is not, however, conclusive proof of ineffective assistance of counsel. Id. The Court must analyze the Strickland factors as it does all claims for ineffective assistance of counsel. Id. "Reasonable performance of counsel includes an adequate investigation of the facts of the case, consideration of viable theories, and development of evidence to support those theories." Henderson v. Sargent, 926 F.2d 706, 711 (8th Cir. 1991). Investigating the witnesses with knowledge about the Defendant's guilt or innocence has been described by the Eighth Circuit as a "duty." Id. (quoting Lawrence v. Armontrout, 900 F.2d 127, 130 (8th Cir. 1990); Eldridge v. Atkins, 665 F.2d 228, 232 (8th Cir. 1981). But failure to perform the duty to investigate does not automatically render counsel's performance ineffective. Sanders v. Trickey, 875 F.2d 205, 209 (8th Cir. 1989) ("There is, however, no per se rule that failure to interview witnesses constitutes ineffective assistance. Ineffective assistance cases turn on their individual facts."). Even assuming the Defendant has proven Attorney Toay failed to investigate the case, the Defendant "must make a substantial showing that his counsel fell short of the Sixth Amendment standards and that this shortcoming was probably the cause of his conviction." Kramer, 21 F.3d at 307.

[¶106] The Defendant has failed to establish Attorney Toay's performance relating to the witness investigation fell below the objectively reasonable standard. Underlying this conclusion is the extensive record of the Defendant continuously stonewalling Attorney Toay and his attempts to communicate with the Defendant regarding trial strategy. Numerous examples support this

decision. At the February 15, 2015, *ex parte* status conference, Attorney Toay informed the Court

the last two phone conversations with the Defendant ended with the Defendant hanging up on

Attorney Toay. Doc. No. 341, p. 13. Attorney Toay's asserted that attempts at written

communication with the Defendant also did not work. Id. At another status conference merely five

days later, on February 10, 2015, Attorney Toay stated the Defendant requested Attorney Toay to

conduct an independent investigation of the discovery materials, but that Attorney Toay needed

"more clarification from [the Defendant]" on what the Defendant meant. Doc. No. 371, p. 21.

[¶107] On March 5, 2015, Attorney Toay emailed the Court to request another *ex parte* status

conference. Doc. No. 453-1, p. 9. In making the request, Attorney Toay stated the Defendant was

refusing to meet with him despite visiting the jail four separate times. Id. at p. 8. The Defendant

was also refusing to discuss the case or even sit down with Attorney Toay. Id. Attorney Toay

explained he sent several letters asking the Defendant to call, but the Defendant never called. Id.

In short, Attorney Toay requested the hearing for guidance in his role as the Defendant's attorney

since the Defendant refused to meet with Attorney Toay or "even let [Attorney Toay] know what

defense, if any, he want[ed Attorney Toay] to argue at trial." Id. Attorney Toay explained this on

the record at an *ex parte* status conference that same day. Doc. No. 342, pp. 5-6. The Court then

encouraged the Defendant to review discovery and discuss the case with Attorney Toay. Id. at pp.

8-9.

[¶108] During an *ex parte* portion of a hearing on April 28, 2015, the Court addressed the

Defendant's frustration with counsel's assessment that the Defendant would lose at trial and be

subject to a mandatory life sentence:

> THE COURT: What I keep hearing is more of a message that, you know, that
> you're unhappy. You want to shoot the messenger. And that may be. But the reality
> of it is that as this case prepares for trial if it's all about the credibility of the
> witnesses then it's all about the trial.

\*               \*               \*

What I hear is someone who is unhappy with the analysis that's being provided him. I haven't heard anything that would lead me to believe that Mr. Toay is not vigorously preparing for trial. I mean, what the case is about is it's about the cross-examination of the witnesses who have made statements against you. And part of the analysis that the lawyer makes is what information do you have in order to undermine the credibility of their statements?

\*               \*               \*

But I haven't heard anything here at all in any of your letters or anything that's been said in open court that would lead me to believe that Mr. Toay has done anything other than what an ordinary prudent lawyer would do.

Doc. No. 373, pp. 16, 19-20.

[¶109] The record is clear Attorney Toay diligently attempted to communicate with the Defendant to assist in his own defense. However, it was the Defendant's choice to refuse to participate. It is clear the Defendant's claim Attorney Toay failed to investigate or prepare a defense in this matter is meritless because the Defendant refused to participate in his defense. Any potential deficiency falls on the Defendant's shoulders, not Attorney Toay's. However, just as the Court found at the April 28, 2015, hearing, the Court again concludes the voluminous record in this case establishes Attorney Toay did everything an ordinary and reasonably attorney would do under the circumstances of preparing for trial. See Strickland, 466 U.S. at 690

[¶110] Accordingly, the Defendant has failed to show Attorney Toay's performance fell below the objective standard or that such alleged failure resulted in prejudice. See Kramer, 21 F.3d at 309 (noting the standard for failure to investigate claims of ineffective assistance of counsel must be analyzed under the Strickland framework). Accordingly, the Defendant's Motion to Vacate under 28 U.S.C. § 2255 regarding Attorney Toay's alleged failure to conduct an investigation is **DENIED**.

**(3) Attorney Toay's Alleged Failure to Make a Defense**

[¶111] Defendant's conclusory allegation Attorney Toay failed to make a defense is likewise betrayed by the trial record in this case. The Sixth Amendment requires counsel to act on behalf of a criminal defendant as an advocate. United States v. Chronic, 466 U.S. 648, 656 (1984). "The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing." Id. If counsel entirely fails to make a defense at trial, then it is clear there has been ineffective assistance of counsel under the Sixth Amendment. Id. at 659 ("Similarly, if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable."). Under such circumstances, a showing of prejudice is not necessary. Id.

[¶112] The record in this case conclusively establishes Attorney Toay provided an adequate defense at trial. He provided a strong cross-examination of each witness. See Doc. No. 306, pp. 210-15 (cross-examination of Anthony J. Farrell); Doc. No. 307, pp. 19-23 (cross-examination of Wesley Vert), pp. 24-25 (recross-examination of Wesley Vert), pp. 38-43 (cross-examination of Daniel Casetta), pp. 47-48 (recross-examination of Daniel Casetta), pp. 84-89 (cross-examination of Brian J. McMahan), pp. 90-91 (recross-examination of Brian J. McMahan), pp. 114-25 (cross-examination of Shawn A. Ellingson), pp. 136-39 (cross-examination of Bradley Huard), pp. 153-55(cross-examination of Brian Noyes), pp. 191-207 (cross-examination of Kimberly A. Ratliff), pp. 216-18 (cross-examination of Floyd P. Brodin), and pp. 225-229 (cross-examination of Jessica E. Kirchoffner); and Doc. No. 308, pp. 18-24 (cross-examination of Heather Schake) and pp. 481-91. After the United States' case-in-chief was complete, Attorney Toay made a Motion for Acquittal under Rule 29 of the Federal Rules of Criminal Procedure on Count Two. Id. at p. 37-

38. Finally, Attorney Toay called Christina Morado to testify on behalf of the Defense. See Doc. No. 308, pp. 33-36. Attorney Toay provided a vigorous closing argument, specifically challenging the sufficiency of the evidence provided by the United States. Id. at pp. 84-97.

[¶113] Putting all of this together, the Court concludes the record establishes Attorney Toay provided the Defendant with a more than adequate defense of the claims and Attorney Toay's conduct did not fall below what is expected of counsel. See Chronic, 466 U.S. at 659 ("Similarly, if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable."). Indeed, the Court notes the significance of Attorney Toay's performance in light of the Defendant's obstinate refusal to participate in preparing a defense of the case. The record shows the Defendant was provided an adequate defense and he is not entitled to relief in this regard. See Doc. No. 344, p. 3-4 ("Moreover, the record is plain – Delacruz's counsel presented a competent defense and zealously advocated on Delacruz's behalf, despite the lack of communication.").

[¶114] Accordingly, the Defendant's Motion to Vacate under 28 U.S.C. § 2255 for Attorney Toay allegedly failing to provide any defense of the case is **DENIED**.

### j. Claim Nine: Alleged Ineffective Assistance of Counsel at Trial and on Direct Appeal for Allowing Defendant to be Convicted and Enhanced on Insufficient Proof of Drug Amount

[¶115] The Defendant contends both Attorney Toay and Attorney Rosenfeldt provided ineffective assistance of counsel for "allowing Defendant to be convicted and enhanced on insufficient proof of drug amount." Doc. No. 433, pp. 14-16. In making this argument, the Defendant contends the evidence at trial was insufficient to meet the 500 grams or more as alleged in the Indictment and "counsel was inefficient for failing to call the insufficiency of proof to this Court's attention at

trial or on Direct [appeal]." Id. at p. 16. According to the Defendant, this was because (1) the evidence showed multiple conspiracies, not a single conspiracy; (2) there was no physical evidence offered at trial; and (3) the United States did not offer evidence of any single drug transaction of 500 grams or more of methamphetamine. Id. at pp. 14-16.

[¶116] The United States argues the Defendant's claim is not one for ineffective assistance of counsel. Doc. No. 453, p. 91. Rather, the claim challenges the sufficiency of the evidence. Id. As to the three reasons counsel was allegedly ineffective regarding the sufficiency of the evidence, the United States contends each are barred by the law of the case doctrine or procedurally defaulted. The Court agrees with the United States.

[¶117] Regarding the Defendant's multiple conspiracy claim, after reviewing the record on appeal, the Eighth Circuit definitively concluded:

> Delacruz does not (and could not) argue that the above-summarized evidence did not permit a reasonable jury to find that the elements of an unlawful conspiracy were proved. **We conclude a reasonable jury could find the government proved the single conspiracy charged in the indictment**. As in United States v. Slagg, 651 F.3d 832, 842 (8th Cir. 2011), "the Government's evidence largely involved the same group of individuals working with one another to conduct the same activity, distribution of methamphetamine, in the same location, . . . during the time frame alleged in the indictment." A single conspiracy may exist despite being composed of multiple groups, even when those groups compete. See United States v. Delgado, 653 F.3d 729, 736 (8th Cir. 2011), cert denied, 565 U.S. 1115 (2012).

Delacruz, 865 F.3d at 1005. This holding bars the Defendant's multiple conspiracy claim because "[i]t is well settled that claims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255." United States v. Shabazz, 657 F.2d 189, 190 (8th Cir. 1981).

[¶118] The Defendant's claim there was no physical evidence, and the witnesses were not credible suffer the same fate. The Eighth Circuit rejected these same arguments on the Defendant's direct appeal. Delacruz, 865 F.3d at 1006 (quoting United States v. Buckley, 525 F.3d 629, 632 (8th Cir.

2008)) (noting verdicts based on the testimony of co-conspirators are routinely upheld by the Eighth Circuit and credibility determinations regarding the witnesses are "within the province of the jury"). Because this issue was litigated on direct appeal, the decision by the Eighth Circuit bars the Defendant from reraising it here. Shabazz, 657 F.2d at 190.

[¶119] Finally, the Defendant's claim a single transaction of 500 grams or more of methamphetamine was not present fails both procedurally and on the merits. Procedurally, the Defendant has defaulted on this claim because it could have been raised on direct appeal but was not. See McNeal v. United States, 249 F.3d 747, 749 (8th Cir. 2001). Having failed to raise this claim on direct appeal, the Defendant may only assert it now if he demonstrates cause for the default and prejudice or actual innocence. Id. ("A defendant who has procedurally defaulted a claim by failing to raise it on direct review may raise that claim in a Section 2255 proceeding only by demonstrating cause for the default and prejudice or actual innocence."). The Defendant has not shown any cause for not raising this issue on direct appeal. He has also failed to show how not raising the issue on appeal caused him prejudice or that he is actually innocent of the crimes for which he was convicted by the jury.

[¶120] Nor can the defendant show prejudice or actual innocence on this issue because it necessarily fails on the merits. The United States does not need to provide evidence showing the Defendant engaged in a single transaction with 500 grams or more of methamphetamine to find him guilty of the offense charged in Count One of the Indictment. It is well-established in the Eighth Circuit "[a] defendant is responsible for the drugs distributed by his co-conspirators if their sales were made '(1) in furtherance of the conspiracy and (2) were either known to [the defendant] or were reasonably foreseeable.'" United States v. Coleman, 584 F.3d 1211, 1125 (8th Cir. 2009) (quoting United States v. Foxx, 544 F.3d 943, 953 (8th Cir. 2008)). Nothing in this requires the

United States to prove the Defendant had at least one sale of 500 grams or more of methamphetamine. As pointed out by the United States in their closing argument, the conspiracy consisted of well over 500 grams of methamphetamine that the Defendant was either directly responsible for or for which it was reasonably foreseeable to him the drugs were involved in the same conspiracy. See Doc. No. 308, pp. 78-89 (accurately summarizing the drug quantities involved based on the testimony at trial). The Defendant's claim of prejudice is, therefore, contrary to the established record in this case.

[¶121] Accordingly, the Defendant's Motion to Vacate under 28 U.S.C. § 2255 regarding the sufficiency of the proof of drug quantities is **DENIED**.[13]

> **k.   Claim Ten: Alleged Ineffective assistance of Counsel for Attorney Toay failing to Move for Acquittal on Count Two Because the United States Allegedly Constructively Amended the Charge or otherwise Proved the Wrong Crime**

[¶122] Count Two of the Indictment charged the Defendant with Use of a Firearm During a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1)(A). The Defendant claims Attorney Toay was ineffective for failing to do proper research on the law regarding Count Two which led to either the United States constructively amended this charge during trial[14] or that Count Two was duplicitous. Doc. No. 433, pp. 17-20.[15] Id. According to the Defendant, had Attorney Toay

---

[13] Insofar as the Defendant contends Attorney Toay and Attorney Rosenfeldt should have raised these issues and were, therefore, ineffective, for the same reasons discussed above, any claim for ineffective assistance of counsel in these regards is likewise denied. The Defendant failed to show (1) counsel was deficient and (2) he suffered any prejudice. See Strickland, 466 U.S. at 690

[14] The caption of the Defendant's Claim Ten states the alleged constructive amendment was from a violation of 18 U.S.C. § 924(c)(1)(A) to a violation of 18 U.S.C. § 924(o). Doc. No. 433, p. 17. However, reading the substance of the Defendant's claim, he argues the constructive amendment occurred within 18 U.S.C. § 924(c)(1)(A). The Court will address this issue below.

[15] The Defendant also attacks the lack of a specific date. This argument was squarely rejected by the Eighth Circuit on direct appeal. Delacruz, 865 F.3d at 1006 (concluding "the inclusion of the March 21, 2014 date in both the indictment and jury instructions and the general unanimity instruction eliminated any genuine risk of jury confusion. The district court did not err, much less plainly err, in not giving a more specific unanimity instruction for Count Two"). There was a

conducted the proper research, he would have discovered the errors in the United States' case and been successful on a Motion for Acquittal at trial. Id. The United States argues this claim (1) is procedurally defaulted; (2) barred by the law of the case doctrine; and (3) fails on the merits. The Court agrees with the United States. Doc. No. 453, pp. 97-107.

[¶123] The Court does not need to address whether the Defendant procedurally defaulted on this claim because assuming without deciding Attorney Toay was deficient in failing to raise the issues to the trial Court, the Defendant suffered no prejudice for Attorney Toay's alleged deficiency. The charge was neither constructively amended at trial nor did the United States prove the wrong offense under 18 U.S.C. § 924(c)(1)(A).

[¶124] Section 924(c)(1)(A) of Title 18 of the United States Code provides:

> Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—
>
> (i) be sentenced to a term of imprisonment of not less than 5 years;
>
> (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
>
> (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

18 U.S.C. § 924(c)(1)(A). The Eighth Circuit has held there are "two distinct crimes" specified in this statute. United States. v. Brown, 560 F.3d 754, 766-7 (8th Cir. 2009); see also United States

---

specific date alleged in the Indictment and the Eighth Circuit concluded there was no error in the jury instructions relating to the date. This issue is foreclosed by the decision on the Defendant's direct appeal. Shabazz, 657 F.2d at 190.

v. Kent, 531 F.3d 642, 653-54 (8th Cir. 2008); United States v. Gill, 513 F.3d 836, 850 (8th Cir. 2008); United States v. Gamboa, 439 F.3d 796, 810 (8th Cir. 2006). First, "*using or carrying* a firearm *during and in relation to* the underlying crime." Id. at 767 (emphasis in original). Second, "*possessing* a firearm *in furtherance of* the underlying crime." Id. (emphasis in original). "'[I]n furtherance of' requires a slightly higher standard of participation than the language 'during and in relation to,' such that 'during and relation to' is encompassed by the broader language of 'in furtherance of.'" Gamboa, 439 F.3d at 810; see also Kent, 531 F.3d at 654 (quoting the same).

[¶125] Count Two of the Indictment charged the Defendant with "Use of a Firearm During a Drug Trafficking Crime." Doc. No. 14, p. 3. It alleged the Defendant "knowingly used, carried, and brandished a firearm during and in relation to and in furtherance of a drug trafficking crime. Id. The preliminary and final jury instructions on element two of Count One instructed the jury they must find "[t]he defendant knowingly used, carried, and brandished a firearm in relation to and in furtherance of that crime." Doc. Nos. 225, p. 16; 242, p. 9. In other words, the Indictment and the instructions contained both the broader language of "in furtherance of" and "in relation to," which is encompassed by "in furtherance of." See Gamboa, 439 F.3d at 810.

[¶126] The Defendant was convicted of one charge: "Use of a Firearm During a Drug Trafficking Crime." Doc. No. 233, p. 3 (verdict on Count 2). Given the language of the charge and the verdict form, the Defendant was charged under the less stringent "during and in relation to" violation of 18 U.S.C. § 924(c)(1)(A). But the proof required by the United States in the instruction was higher than what the charge required. See Gamboa, 439 F.3d at 810.

[¶127] The Court finds Gill instructive. In Gill, the Court faced a question of whether a constructive amendment occurred at trial. 513 F.3d at 849. The initial charge in Gill was for an "in relation to" violation of Section 924(c)(1)(A). Id. At trial, however, the instructions required the

United States to prove a "in furtherance of" violation. Id. The Eighth Circuit noted a "[c]onstructive amendment 'occurs when the essential elements of the offense set forth in the indictment are in effect altered by the prosecutor or the court after the grand jury as passed upon them.'" Id. (quoting United States v. Stuckey, 220 F.3d 976, 979 (8th Cir. 2000)). Such an amendment would "allow the jury to convict the defendant of an offense other than the one alleged in the indictment." Id. The Court in Gill concluded the change did not constructively amend the charge and therefore there was no error. Id. at 850. The charge alleged Gill "did knowingly and intentionally carry one or more firearms during and in relation to drug trafficking crimes." Id. The instruction did not track the statutory language of the crime. Id. at 581. Instead, the jury instruction in Gill required the United States to prove "[t]he defendant knowingly *possessed* a firearm *in furtherance of* that crime." Id. The Eighth Circuit noted the instruction required the United States to prove the second Section 924(c)(1)(A) offense rather than the first. Id. This was not a constructive amendment "[b]ecause the jury instructions did not create a substantial likelihood that Gill could have been convicted of an offense other than the offense charged by the grand jury." Id. For the same reason, the Court concluded Gill's substantial rights were not affected. Id. at 851-52.

[¶128] The exact same analysis applies here. The instructions and Indictment both had misleading language. The fact that the United States was required to prove the more stringent standard for a violation of Section 924(c)(1)(A) does not constructively amend the charge. Id. at 581. There was not a substantial likelihood the jury would convict the Defendant for a separate crime than the one they convicted him. Accordingly, even assuming without deciding Attorney Toay was deficient in not objecting to the instructions, the Defendant cannot show the outcome would have been any different because, like in Gill, there was no constructive amendment to the charge.

[¶129] The Court also concludes, assuming Attorney Toay was deficient for not objecting to the charge being duplicitous, that the Defendant has not shown he suffered prejudice because the charge is not duplicitous.[16] A duplicitous charge occurs when two or more separate charges are joined in a single count of an indictment. United States. v. Smith, 910 F.3d 1047, 1052 (8th Cir. 2018). This is problematic "because 'the jury may convict a defendant without unanimous agreement on the defendant's guilt with respect to a particular offense.'" Id. (quoting United States v. Paul, 885 F.3d 1099, 1104 (8th Cir. 2018)).

[¶130] There was no risk present of the charge being unfairly duplicitous. Had the instruction and Indictment been worded correctly, they would have stated the Defendant "knowingly used, carried and brandished a firearm during and in relation to . . . a drug trafficking crime." See Doc. No. 22, p. 4 (modified to omit incorrect standard language). However, "during and in relation to" is "encompassed by 'in furtherance of.'" See Gamboa, 439 F.3d at 810. In other words, proof of "in furtherance of" necessarily entails proof of the required "during and in relation to" standard. See Gamboa, 439 F.3d at 810 (noting "finding that a defendant possessed a firearm 'in furtherance of' a drug trafficking crime requires a showing of something more than possession 'during and in

---

[16] The United States argues here the inclusion of "in furtherance of" is mere surplusage and therefore the charge is not duplicitous. Doc. No. 453, p. 102-103. The Court is unpersuaded by this argument because the cases relied upon by the United States each discuss the Court's removal of the surplus language, not whether a duplicitous count was considered by the jury. See id. at p. 102 (citing United States v. Haile, 685 F.3d 1211, 1217 (11th Cir. 2012) (noting the surplus language was properly removed by the district court); United States v. Ashley, 606 F.3d 135, 141-42 (4th Cir. 2010) ("Since 'during and in relation to' is not an element of the 'possesses' version of the offense with which [the defendant] was charged, it was simply surplusage and could be omitted by the district court in its instructions."); United States v. Brooks, 438 F.3d 1231, 1237 (10th Cir. 2006) (striking surplus language was appropriate)). The question here is not whether the Court properly struck the surplus language because the language was never struck or omitted by the Court. The question is whether the Defendant suffered prejudice by its inclusion in the presence of a non-objection from Attorney Toay. As discussed fully below, the Court concludes there was no prejudice.

relation to' a drug trafficking crime"). To prove Count Two, the United States needed to show the Defendant used, carried and brandished a firearm "during and in relation to" the drug trafficking offense. The additional language of "in furtherance of" the drug trafficking offense cannot change the outcome because finding the Defendant used the firearm in furtherance of the drug trafficking crime necessarily entails a finding he used it "during and in relation to" the offense. The two terms are not mutually exclusive with "during and in relation to" falling within the definition of "in furtherance of" a drug trafficking offense. Id.

[¶131] Even if Attorney Toay would have made an objection to the jury instructions at trial and the additional language was omitted, given the substantial evidence the Defendant used the firearm during the conspiracy, the Defendant has not shown the outcome of the trial would have been different but for the error. See Doc. No. 344, p. 6 ("There was substantial evidence, beyond mere conjecture or speculation, to support the verdict on each count."). The Defendant, therefore, did not suffer prejudice by the inclusion of "in furtherance of" in the Superseding Indictment and the jury instructions.

[¶132] Accordingly, the Defendant's Motion to Vacate under 28 U.S.C. § 2255 as it relates to the alleged ineffective assistance of counsel claim for failing to challenge the language for proving Count Two of the Indictment is **DENIED**.

    **l.   Claim Eleven: Alleged Ineffective Assistance of Counsel for Sentencing Counsel Failing to Challenge the Information to Establish Prior Conviction, Resulting in an Allegedly Illegal Sentence**

[¶133] In Claim Eleven, the Defendant asserts sentencing counsel (Attorney Rosenfeldt) was ineffective for not challenging the 851 Notice, resulting in an illegal sentence. Doc. No. 428, p. 13. Originally, he provided no support for this claim, but moved for an extension of time to file his Memorandum in Support. See id.; see also Doc. Nos. 429 (motion requesting additional time);

430 (order granting motion for additional time). On June 12, the Defendant mailed his Memorandum in Support. Doc. Nos. 433; 433-6 (mailing envelope). In it, the Defendant argues not only was Attorney Rosenfeldt ineffective for not challenging the 851 Notice of prior conviction, but also that Attorney Toay was ineffective for not challenging it while he was still the Defendant's Attorney. Doc. No. 433 at pp. 21-23.

[¶134] The United States argues the newly asserted claim against Attorney Toay in the Memorandum is time-barred because it is not related to the original claim against sentencing counsel and was filed outside the statute of limitations period. Doc. No. 453, p. 107-109. As to the merits, the United States argues the record establishes Attorney Toay provided correct advice regarding the 21 U.S.C. § 851 Notice and Attorney Rosenfeldt did not provide ineffective assistance of counsel during the sentencing portion of the proceedings. Id. at pp. 109-121. The Court agrees with the United States.

### (1) Timeliness of Claim Against Attorney Toay

[¶135] The United States argues the Defendant's claim against Attorney Toay regarding the § 851 Notice is untimely.

[¶136] Under 28 U.S.C. § 2255, a criminal defendant has one year from the date on which the judgment becomes final to file a petition seeking to vacate the judgment. 28 U.S.C. § 2255(f)(1). The Defendant's conviction became "final" within this meaning on January 28, 2018.[17] Therefore,

---

[17] The Eighth Circuit entered judgment denying the Defendant's appeal on July 31, 2017. Doc. No. 399. The Defendant made a timely request for a rehearing by the panel and *en banc* on October 6, 2017. United States v. Delacruz, 16-2066, Entry No. 4587328 (8th Cir. Oct. 6, 2017). That request was denied by the Eighth Circuit on October 30, 2017. Id. at Entry No. 4594907. Delacruz had 90 days from October 30, 2017 to file a petition for certiorari to the Supreme Court, which he declined to file. See Clay v. United States, 537 U.S. 522, 532 (2003) ("We hold that, for federal criminal defendants who do not file a petition for certiorari with this Court on direct review, § 2255's one-year limitation period starts to run when the time for seeking such review expires."); U.S. Sup. Ct. R. 13(1) ("Unless otherwise provided by law, a petition for a writ of certiorari to

the Defendant had one year to file any new claims unless they "relate back" to his original claims.

See Dodd v. United States, 614 F.3d 512, 515 (8th Cir. 2010) ("claims made in an untimely filed motion under § 2255 may be deemed timely if they relate back to a timely filed motion as allowed by Federal Rule of Civil Procedure 15(c).").

[¶137] The Defendant originally filed his Motion to Vacate under 28 U.S.C. § 2255 on January 28, 2019. Doc. No. 428, p. 16. For Ground Eleven, the Defendant only provided the heading suggesting the subject matter of the claim. Id. at p. 13. The heading specifically stated, "**Sentencing Counsel** was Ineffective for Failing to Challenge the 851 Notice. Thus, Mr. Delacruz was Illegally Sentenced." Id. (emphasis added). Sentencing Counsel was Attorney Resenfeldt. Doc. No. 365 (sentencing transcript). Simultaneously filed with the Motion was a Motion for Extension of Time to File Memorandum in Support, which the Court granted. Doc. Nos. 429, 430. The Defendant filed his Memorandum in Support on June 12, 2019. Doc. No. 433-6. In this memorandum, the Defendant alleged, in addition to the claim against "Sentencing Counsel," numerous factual claims regarding Attorney Toay's advice regarding the 21 U.S.C. § 851 Notice.

[¶138] Because the original Motion did not contain an allegation regarding Attorney Toay's advice regarding the Notice, the claims against him regarding it are time-barred. His advice is distinct and unrelated to the advice provided by Attorney Rosenfeldt. The claims, therefore, do not relate back to the original claim against Attorney Rosenfeldt. Accordingly, the Court concludes Claim Eleven as alleged in the Memorandum in Support regarding Attorney Toay's representation

---

review a judgment in any case, civil or criminal, entered by a state court of last resort or a United States court of appeals (including the United States Court of Appeals for the Armed Forces) is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment."). Ninety days from October 30, 2017, was January 28, 2018.

is time-barred and fails on this ground alone. Even if the Defendant had properly alleged this claim against Attorney Toay in the Motion to Vacate under 28 U.S.C. § 2255, it would fail on the merits.

### (2) Attorney Toay Provided Correct Advice Regarding the 21 U.S.C. § 851 Notice

[¶139] The Defendant contends Attorney Toay was ineffective for not challenging the Defendants two certified prior convictions based on a memorandum from then-Attorney General Eric H. Holder, Jr., ("Holder Memo"). The Defendant also claims Attorney Toay failed to investigate the accuracy of the Notice. According to the Defendant, if Attorney Toay would have properly investigated it, he would have discovered the individual charged in the prior convictions had a different middle name and social security number from the Defendant.

[¶140] The United States contends the record clearly contradicts the Defendant's contentions. The United States argues the Notice was repeatedly discussed at various hearings and in court filings. The Defendant's pre-sentencing challenges to the Notice were not relating to the identity. Rather, the Defendant challenged them based on the Holder Memo. According to the United States, the Defendant admitted the prior convictions were his at sentencing. Putting all of this together, the United States argues Attorney Toay was not ineffective regarding his advice to the Defendant regarding the Notice. The Court agrees with the United States.

[¶141] As to the Holder Memo issue, the Holder Memo provided guidance on when federal prosecutors should certify prior convictions. Memorandum from Attorney General Eric H. Holder, Jr., to the United States Attorneys and Assistant Attorney General for the Criminal division, Department Policy on Charging Mandatory Minimum Sentences and Recidivist Enhancements in Certain Drug Cases (August 12, 2013) found at https://www.justice.gov/sites/default/files/oip/legacy/2014/07/23/ag-memo-department-policypon-charging-mandatory-minimum-sentences-recidivist-enhancements-in-certain-drugcases.pdf.

[¶142] The Holder Memo noted prosecutors should decline to certify prior convictions under 21 U.S.C. § 851 unless the case is appropriate for enhanced sanctions. By its own terms, however, the Holder Memo noted, "[t]he policy set forth herein is not intended to create or confer any rights, privileges, or benefits in any matter, case, or proceeding." Holder Memo at p. 2, n.2 (citing United States v. Caceres, 440 U.S. 741 (1979)). However, nothing raised by the Defendant negates the prosecutor's broad discretion in determining whether to file an information to establish prior convictions under 21 U.S.C. § 851 and the Holder Memo does not take that discretion from the prosecutor. See United States v. Canori, 737 F.3d 181, 183-84 (2d Cir. 2013) (holding a similar memo regarding the prosecution of medical marijuana cases did not confer substantive rights on a Defendant, which provided guidance on how to exercise prosecutorial discretion under those circumstances). The Defendant's claim that Attorney Toay failed to enforce the Holder Memo on the United States is meritless because the prosecutor still maintained broad discretion to file the Notice. Id. Attorney Toay was not ineffective regarding the Holder Memo.

[¶143] As to the Notice itself, Attorney Toay likewise was not ineffective regarding the challenge to the Defendant's identity of the prior conviction. The record demonstrates the prior convictions were discussed by the Defendant, Counsel, and the Court without the Defendant claiming they were not his convictions. See Doc. Nos. 127, p. 1 (pro se letter from the Defendant admitting the convictions were his, but his criminal history was overstated because they were old and the transactions were minimal); 127-1, pp. 1-2 (letter from Attorney Toay to Defendant advising the Defendant's prior convictions mandated a life sentence); 193, p. 4 (letter from the Defendant stating he wanted Attorney Toay to challenge his prior convictions based upon the Holder Memo); 341, p. 4-6 (the Court summarizing the Defendant's letter and informing the Defendant there was no time limit on the age of his prior serious drug offenses and summarizing the Defendant's two

prior convictions without objection from the Defendant); 373, p. 12 (Attorney Toay noting to the Court without objection from the Defendant, "[f]rom every indication that I've gotten from my client, they are valid convictions for my client so I see no basis to challenge them, the validity of those convictions"). In other words, the record shows the Defendant never claimed the prior convictions were not his convictions. Rather, the record establishes the Defendant regarded the convictions as his own, while arguing they should not be considered for other reasons.

[¶144] More importantly, however, is the fact that the record clearly demonstrates the Defendant acknowledged the prior convictions as his convictions. See Doc. No. 345 (pro se motion for hearing on the Notice, acknowledging the prior convictions were his but challenging them on the basis of overstating his criminal history). Finally, at sentencing, the Defendant openly admitted the prior convictions alleged in the Notice were his:

> **And as to my prior convictions**, I find it very disturbing and hard to swallow that the thought of two prior convictions that weren't serious drug offenses, one 15 years old and the other 20 years old, have an effect on my sentencing today. **That is the only prison time that I've ever done** was at the age of 18 for only 10 months. Other that that I never done any other prison time. **I will never understand that these two priors are very old and when I was just a kid** can be used to lump me into a category of a punishment to this extreme. This is a cruel and unusual punishment when looking at my past criminal history.

Doc. No. 365, p. 14[18] (emphasis added). In light of the extensive record showing the Defendant repeatedly acknowledged the prior convictions as his own, his claim Attorney Toay did not properly investigate this issue is meritless.[19]

---

[18] This also confirms the veracity of Attorney Toay's statement to the Court that "[f]rom every indication that I've gotten from my client, they are valid convictions for my client so I see no basis to challenge them, the validity of those convictions." Doc. No. 373, p. 12.

[19] The Defendant also claims Attorney Toay "grossly underestimate[ed]" the exposure the Defendant would have at sentencing. Doc. No. 433, p. 24. This is claim is meritless because it is contrary to record in this matter. See, eg., 127-1, pp. 1-2 (letter from Attorney Toay to Defendant advising the Defendant's prior convictions mandated a life sentence).

[¶145]  Accordingly, the Defendant's Motion to Vacate under 28 U.S.C. § 2255 regarding Attorney Toay's performance as it relates to the Notice is **DENIED**.

### (3)  Attorney Rosenfeldt's Representation of the Defendant at Sentencing Was Not Ineffective

[¶146]  The Defendant argues Attorney Rosenfeldt provided ineffective assistance of counsel at sentencing. Doc. No. 433, pp. 25-27. The Defendant first argues Attorney Rosenfeldt did not object to allegedly improper judicial fact finding and the Court allegedly failing to give notice relating to one of his 1996 North Dakota conviction. Id. It appears the Defendant challenges his 1996 conviction and claims the Court improperly found facts relating to his representation on that hearing. See id. Second, the defendant contends Attorney Rosenfeldt failed to research North Dakota law regarding his prior drug offenses.[20] Id. According to the Defendant, had Attorney Rosenfeldt done the proper research, she would have discovered the prior conviction under North Dakota law is broader than federal law. The United States argues the Court did not make improper judicial fact findings. Doc No. 453, pp. 115-118 The United States also argues the claim the prior conviction under North Dakota law is broader than under federal law is (1) untimely; (2) procedurally defaulted; and (3) wrong on the merits. Id. at 118-121. The Court agrees with the United States.

### i.  Allegedly Improper Fact Finding

[¶147]  The issue the Defendant appears to raise is the Court improperly found he was counseled in his 1996 prior conviction. After carefully reviewing the record, the Court concludes this claim fails because it is contradicted by the record.

---

[20] The Defendant also argues Attorney Rosenfeldt was ineffective for "fail[ing] to make the same foregoing argument before sentencing" as Attorney Toay. Doc. No. 433, p. 25. For the same reasons the Defendant's Motion in this respect is denied as to Attorney Toay, the Motion is denied as to Attorney Rosenfeldt.

[¶148] On October 21, 2014, the United States filed its original Information to Establish Prior Conviction. Doc. No. 62. Attached to the original Information was a Resentencing Judgment on a revocation proceeding. Doc. No. 62-2. On April 13, 2016, the Court issued an order to set a hearing on whether the Defendant's 1996 prior conviction was counseled. Doc. No. 348. Subsequent to that order, the United States filed an amended Information to Establish Prior Conviction (referred to *supra* as the "Notice"). Doc. No. 349. The United States attached the original judgment from the 1996 charge to the Notice. Doc. No. 349-2. The Original Judgment indicated the Defendant was represented by attorney David D. Dusek. Doc. No. 349-2, p. 2.

[¶149] The issue was addressed at the beginning of the sentencing hearing on April 22, 2016. Doc. No. 365, pp. 3-7. The United States indicated the attachment of the revocation judgment was a clerical error. Id. at p. 4. At the hearing, Attorney Rosenfeldt stated she conducted her own independent research, obtained the documents from Grand Forks Court Administration, discussed them with the Defendant, and concluded he did have representation at his initial change of plea. Id. at 365. On that basis, Attorney Rosenfeldt believed there were no grounds to challenge the prior conviction. Id. This is confirmed by the casefile provided by Attorney Rosenfeldt. Doc. No. 353-2, pp. 21-56, 109-10. The Court concluded there was sufficient notice given to the Defendant of the 1996 prior conviction because  (1) the original Information Establishing Prior Conviction indicated the Defendant had pled guilty to a felony drug charge; (2) the Amended Information to Establish Prior Conviction established the Defendant was represented; (3) the filing met all of the requirements of 21 U.S.C. § 851; and (4) the Amended Information was given to correct a clerical error. Id. at 5-7. In sum, the Court concluded the issue "does not give rise to a substantive legal question." Id. at 7; see also 21 U.S.C. § 851(a)(1) ("Clerical mistakes in the information may be amended at any time prior to the pronouncement of sentence.").

[¶150] In short, Attorney Rosenfeldt performed adequately as it related to the Amended Information to Establish Prior Conviction. She independently researched the matter and made the correct decision the Defendant was represented. There was ample time to conduct this research and she consulted with her client in doing so. The record shows Attorney Rosenfeldt performed admirably, not deficiently. See Strickland, 466 U.S. at 690. Likewise, even if Attorney Rosenfeldt's performance was deficient, the issue was raised by the Court, properly addressed on the record, and provided the correct conclusion. The error in the original Information to Establish Prior Conviction was clerical in nature and the Defendant has not provided any basis that the outcome of the hearing on this issue would have been different but for Attorney Rosenfeldt's performance.

[¶151] Accordingly, the Defendant's Motion to Vacate under 28 U.S.C. § 2255 as it relates to Attorney Rosenfeldt's alleged failure to challenge allegedly improper fact finding is **DENIED**.

### ii.   Alleged Failure to Research North Dakota Law Regarding Prior Conviction

[¶152] The Defendant argues Attorney Rosenfeldt was ineffective in sentencing because she allegedly failed to research North Dakota law regarding his prior North Dakota drug convictions. According to the Defendant, if she would have done the research, she would have found North Dakota's statute is overbroad and does not meet the requirements of the modified categorical approach as put forth in Taylor v. United States, 495 U.S. 575 (1990), and Shepard v. United States, 544 U.S. 13 (2005), and Descamps v. United States, 570 U.S. 254 (2013). The United States argues this claim fails for three reasons. First, the United States argues the claim is time-barred because it was raised for the first time several months after the statute of limitations ran on this claim. Second, the United States contends the claim is procedurally defaulted because it could have been raised on direct appeal but was not. Finally, the United States argues the claim fails on

the merits. The Court agrees with the United States the claim is procedurally defaulted and fails on the merits.

[¶153] "It is well settled that claims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255." United States v. Shabazz, 657 F.2d 189, 190 (8th Cir. 1981). While the Defendant contends Attorney Rosenfeldt failed to conduct proper research on this issue resulting in an allegedly illegal sentence, it is clear the Defendant is raising a direct challenge to the validity of his prior convictions. This is a matter he could have raised on appeal but did not. In addition, the Defendant has not shown any cause for not raising the issue nor has he shown he was prejudiced by it not being raised on direct appeal.

[¶154] Even if cause were shown, the Defendant cannot be prejudiced because his claim North Dakota law is overbroad fails on the merits because at the time of sentencing, it was reasonable for Attorney Rosenfeldt to conclude the North Dakota convictions fall within the meaning of a prior felony drug offense under federal law. Prior to trial or a guilty plea, the United States must have certified the Defendant's two prior convictions as provided in 21 U.S.C. § 851:

> No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy oof such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon. Upon a showing by the United States attorney that facts regarding prior convictions could not with due diligence be obtained prior to trial or before entry of a plea of guilty, the court may postpone the trial or the taking of the plea of guilty for a reasonable period for the purpose of obtaining such facts. Clerical mistakes in the information may be amended at any time prior to the pronouncement of sentence.

21 U.S.C. § 851(a)(1).

[¶155] At the time the Defendant was convicted and sentenced in this case, defendants with two prior "felony drug offenses" were subjected to a mandatory life term of imprisonment. 21 U.S.C.

§ 841(b)(1)(A) (2016). "Felony drug offense" is defined as "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marijuana, anabolic steroids, or depressant or stimulant substances." 21 U.S.C. § 802(44). "Narcotic drug" is defined, among other things, as "(C) Coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed. (D) Cocaine, its salts, optical and geometric isomers, and salts of isomers." 21 U.S.C. § 802(17)(C) & (D). The Code of Federal Regulations at the time of the Defendant's sentencing defined "cocaine" as

> Coca leaves (9040) and any salt, compound, derivative or preparation of coca leaves (including cocaine (9041) and ecogonine (9180) and their salts, isomers, derivatives and salts of isomers and derivatives), and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, except that the substances shall not include (i) decocainized coca leaves or extraction of coca leaves, which extractions do not contain cocaine or ecgonine; or (ii) Ioflupane.

21 C.F.R. § 1308.12(b)(4) (effective from Sept. 11, 2015 to Aug. 25, 2016).

[¶156] The record shows the Defendant's prior convictions were for (1) Possession of Controlled Substance – Cocaine (Case No. 18-02-K-02337/001, judgment entered on or about January 9, 2003) and (2) Delivery of Cocaine (Case No. 18-96-K-00658/001, judgment entered on or about June 6, 1996). Doc. No. 349. At the time the Defendant was sentenced in both cases, North Dakota law defined "cocaine" as:

> Coca leaves and any salt, compound, derivative, or preparation of coca leaves, including cocaine and ecgonine and their salts, isomers, derivatives, and salts of isomers and derivatives, and any salt, compound, derivative, or preparation thereof that is chemically equivalent or identical with any of these substances, except that the nondosage substances must include decocainized coca leaves or extractions of coca leaves which do not contain cocaine or ecgonine.

N.D.C.C. § 19-03.1-07(3)(d) (1991).

[¶157] Both the federal and North Dakota definitions of cocaine were nearly identical at the respective times. Compare 21 C.F.R. § 1308.12(b)(4) (effective from Sept. 11, 2015 to Aug. 25, 2016) with N.D.C.C. § 19-03.1-07(3)(d) (1991). At the time of sentencing, it was reasonable for Attorney Rosenfeldt to conclude the North Dakota definition of cocaine was not broader than the federal definition. In making this conclusion, the Court does not need to determine whether North Dakota's definition of cocaine is, as a matter of law, broader than the federal definition. At the time of sentencing the prior convictions would have counted because the Eighth Circuit had not decided otherwise. In other words, the Defendant's claim Attorney Rosenfeldt should have realized the categorical or modified categorical approach should have applied at sentencing to find the Defendant's prior conviction was overly broad is inapplicable here because, as the Eighth Circuit recently held:

> More than one year after [the defendant's] sentencing, we held the categorical approach should be used to determine whether a statute qualifies as a predicate conviction under certain federal sentencing enhancement schemes, including the Controlled Substances Act ("CSA"). We evaluate counsel's performance from counsel's perspective at the time and ignore the distorting effects of hindsight. Because under the law of our circuit at the time of [the defendant's] sentencing his prior conviction under § 570/402(c) was a predicate conviction under § 851, [the defendant's] counsel did not perform deficiently.

Steward v. United States, 2022 WL 3135296, *2 (8th Cir. Aug. 5, 2022) (unpublished) (citations and quotation marks omitted).

[¶158] The same analysis applies here. The categorical approach was not mandated at the time the defendant was sentenced in 2016. Id. Accordingly, without binding Eighth Circuit precedent on this issue, the Court will not find Attorney Rosenfeldt's conduct was deficient at the time because the prior conviction was a predicate offense under 21 U.S.C. § 851. See id.; Love v. United States, 949 F.3d 406, 410 (8th Cir. 2020) ("We make every effort to eliminate the 'distorting effects of hindsight' and consider performance from counsel's perspective at the time."); Brown v. United

<u>States</u>, 311 F.3d 875, 878 (8th Cir. 2002) ("[W]e hold that his counsel's decision not to raise an issue unsupported by then-existing precedent did not constitute ineffective assistance."); <u>Wajda v. United States</u>, 64 F.3d 385, 388 (8th Cir. 1995) ("[C]ounsel's performance is not deficient by failing to predict future developments in the law."); <u>see also</u> <u>Steward v. United States</u>, 2022 WL 3135296, *2 (8th Cir. Aug. 5 2022) (unpublished) ("We evaluate counsel's performance from counsel's perspective at the time and ignore the 'distorting effects of hindsight.'" (quoting <u>Love</u>, 949 F.3d at 410)).[21] Indeed, the record reflects Attorney Rosenfeldt conducted research into the matter and communicated her belief the prior convictions qualify for enhancement purposes to the Defendant. Doc. No. 453-2, p. 117. The Defendant has failed to show Attorney Rosenfeldt performed deficiently or that he suffered prejudice.

[¶159] Accordingly, the Defendant's Motion to Vacate under 28 U.S.C. § 2255 relating to his prior conviction and the definition of cocaine is **DENIED**.

### m. Claim Twelve: Cumulative Impact of Counsel's Performance Allegedly Resulted in Ineffective Assistance of Counsel

[¶160] The Defendant argues even if the claims discussed above are individually insufficient for a grant of relief under 28 U.S.C. § 2255, the Court should find the Defendant suffered prejudice

---

[21] The Defendant's argument here could be construed as a direct challenge to the definition of cocaine in the federal statute compared to the North Dakota definition. The argument would be that because North Dakota's definition of cocaine includes "derivative" while the federal statutory definition does not, North Dakota's law prohibits more than the federal statute. <u>Compare</u> 21 C.F.R. § 1308.12(b)(4) (effective from Sept. 11, 2015 to Aug. 25, 2016) <u>with</u> N.D.C.C. § 19-03.1-07(3)(d) (1991). In <u>United States v. Myers</u>, the Eighth Circuit found Missouri's definition included positional isomers, which was more broad than the federal definition. 56 F.4th 595, 599 (8th Cir. 2022). <u>Myers</u>, however, was decided after the Defendant was sentenced here and the Defendant raises the issue as a collateral attack on his conviction based on Attorney Rosenfeldt's allegedly deficient performance. This issue could have been ripe for direct review, not collateral review. In addition, as noted above, "counsel's decision not to raise an issue unsupported by then-existing precedent did not constitute ineffective assistance." <u>Brown</u>, 311 F.3d at 878. The Court has been unable to find any binding precedent from the Eighth Circuit that expressly states North Dakota's definition of cocaine contained a broader prohibition on cocaine than the federal definition.

because of the cumulative impact of the alleged errors. The United States argues the Defendant's attorneys provided high-quality representation and he has failed to show prejudice or deficient performance in any respect.

[¶161] It is well-established in the Eighth Circuit, "a habeas petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test." Middleton v. Roper, 455 F.3d 838, 851 (8th Cir. 2006) (quoting Hall v. Luebbers, 296 F.3d 685, 692 (8th Cir. 2002)) (citing United States v. Robinson, 301 F.3d 923, 925, n.3 (8th Cir. 2002) ("[T]he numerosity of the alleged deficiencies does not demonstrate by itself the necessity for habeas relief."); Wainwright v. Lockhart, 80 F.3d 1226, 1233 (8th Cir. 1996) ("Errors that are not unconstitutional individually cannot be added together to create a constitutional violation."); Scott v. Jones, 915 F.2d 1188, 1191 (8th Cir. 1990) ("[C]umulative error does not call for habeas relief, as each habeas claim must stand or fall on its own.")).

[¶162] Because the Eighth Circuit has resoundingly rejected the Defendant's cumulative impact argument, the claim fails on its merits. The Defendant's Motion to Vacate under 28 U.S.C. § 2255 on this ground is, therefore, **DENIED**.

## II.     No Hearing Is Necessary

[¶163] The Defendant requests a hearing on his Motion to Vacate under 28 U.S.C. § 2255. A prisoner is entitled to an evidentiary hearing on a Section 2255 motion unless the motion, files, and records of the case conclusively show that the prisoner is not entitled to relief.  28 U.S.C. § 2255; Engelson v. United States, 86 F.3d 238, 240 (1995). A Section 2255 motion "may be dismissed without hearing if (1) movant's allegation, accepted as true, would not entitle the petitioner to relief, or (2) [the] allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions rather than statements of fact." See

Winters v. United States, 716 F.3d 1098 (2013); see also, Holloway v. United States, 960 F.2d 1348, 1358 (8th Cir. 1992) (a single, self-serving, self-contradicting statement is insufficient to render the motions, files and records of the case inconclusive); Smith v. United States, 618 F.2d 507, 510 (8th Cir. 1980) (mere statement of unsupported conclusions will not suffice to command a hearing).

[¶164] As discussed above, the record conclusively shows the Defendant is not entitled to relief for any of his claims or his claims cannot be accepted as true because they are contradicted by the record, inherently incredible, or are conclusory allegations not supported by facts. Accordingly, the Defendant's request for a hearing is **DENIED**.

### III.    Motion for Leave to File Supplemental Grounds for Relief

[¶165] The Defendant argues he was unable to discover the additional claims he now seeks to assert due to the COVID-19 pandemic and the effect it had on his ability to research the law. It was not until he discussed the matter with a "jailhouse lawyer" that he became aware he could make these additional claims. He agrees his additional claims fall outside the scope of the one-year statute of limitations period but asks the Court permission to equitably toll the statute of limitations and allow him to proceed on the merits of these claims. Finally, the Defendant claims the statute of limitations is unconstitutional as contrary to the Thirteenth Amendment.

[¶166] The United States argues the new claims do not relate back to the Defendant's original grounds for relief and they are, therefore, subject to the one-year statute of limitations found at 28 U.S.C. § 2255(f)(1). In addition, the United States argues the Defendant is not entitled to equitably toll the statute of limitations because he has neither diligently pursued his rights nor are there extraordinary circumstances that prevented him from timely filing these new claims. Finally, the United States argues statute of limitations is constitutional, noting courts have routinely rejected

constitutional challenges to the one-year limitations period of 28 U.S.C. § 2255(f). The Court agrees with the United States.

[¶167] Under 28 U.S.C. § 2255, a criminal defendant has one year from the date on which the judgment becomes final to file a petition seeking to vacate the judgment. 28 U.S.C. § 2255(f)(1). The Defendant's conviction became "final" within this meaning on January 28, 2018.[22] Therefore, he had one year to file any new claims unless they "relate back" to his original claims. See Dodd v. United States, 614 F.3d 512, 515 (8th Cir. 2010) ("claims made in an untimely filed motion under § 2255 may be deemed timely if they relate back to a timely filed motion as allowed by Federal Rule of Civil Procedure 15(c).").

### a.  New Claims Relationship to the Original Claims

[¶168] The United States argues each of the Defendant's new claims does not relate back to his original Motion to Vacate under 28 U.S.C. § 2255. The Defendant concedes this, stating, "[a]lthough Movant's supplemental grounds are outside the 1-year [statute of] limitations period, the mere passage of time does not cure a void conviction." Doc. No. 489, p. 3.

[¶169] From the Court's review of the record, it does not appear the Defendant argues or even suggests the new claims relate back to his original, timely filed § 2255 petition. On this alone, the

---

[22] As noted above, the Eighth Circuit entered judgment denying the Defendant's appeal on July 31, 2017. Doc. No. 399. The Defendant made a timely request for a rehearing by the panel and *en banc* on October 6, 2017. United States v. Delacruz, 16-2066, Entry No. 4587328 (8th Cir. Oct. 6, 2017). That request was denied by the Eighth Circuit on October 30, 2017. Id. at Entry No. 4594907. Delacruz had 90 days from October 30, 2017 to file a petition for certiorari to the Supreme Court, which he declined to file. See Clay v. United States, 537 U.S. 522, 532 (2003) ("We hold that, for federal criminal defendants who do not file a petition for certiorari with this Court on direct review, § 2255's one-year limitation period starts to run when the time for seeking such review expires."); U.S. Sup. Ct. R. 13(1) ("Unless otherwise provided by law, a petition for a writ of certiorari to review a judgment in any case, civil or criminal, entered by a state court of last resort or a United States court of appeals (including the United States Court of Appeals for the Armed Forces) is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment."). Ninety days from October 30, 2017, was January 28, 2018.

Court concludes the new claims do not relate back to the original Motion to Vacate under § 2255. However, even reviewing the substance of each new claim, the Court concludes they do not relate back to the original Motion.

[¶170] The Court looks to Rule 15(c) of the Federal Rules of Civil Procedure when determining whether a new claim relates back to the original claims. See Dodd, 614 F.3d at 515. "Claims in an amended motion relate back to the original motion when the amendment asserts a claim that arose out of the same 'conduct, transaction, or occurrence set out . . . in the original' motion." Id. A claim arises out of the same conduct, transaction, or occurrence when they are "tied to a common core of operative facts." Id. (quoting Mayle v. Felix, 545 U.S. 644, 664 (2005)) (quotation marks omitted). Simply alleging ineffective assistance of counsel in the course of trial representation is not enough to relate back to the original claims. Id. New ineffective assistance of counsel claims "must be of the same 'time and type' as those in the original motion, such that they arise from the same core set of operative facts." United States v. Hernandez, 436 F.3d 851, 857 (8th Cir. 2006) (quotation marks and citation omitted).

[¶171] The Court has reviewed the entire record in this matter and concludes the new claims plainly do not relate back to the original, timely filed Motion to Vacate under 28 U.S.C. § 2255. Each claim asserts a new type of ineffective assistance of counsel claim that is separate and distinct from the claims in the original motion. The Defendant concedes this, stating he was unaware of these new claims until he spoke with a "jailhouse lawyer" and learned he could have made these arguments in his original motion. In essence, the only relationship the new claims have to the original claims is that they claim ineffective assistance of counsel. As the Eighth Circuit has noted, this is insufficient to find they relate back to the original claims. See Dodd, 614 F.3d at 515 ("Thus, it is not enough that both an original motion and an amended motion allege ineffective assistance

of counsel during trial."). The Defendant also claims he has suffered an "abuse of process" due to these newly alleged errors. Abuse of process is also an entirely new claim that does not arise out of the same facts or circumstances of any of the claims brought in the original Motion. Accordingly, the claim for abuse of process likewise does not relate back to the claims in the original Motion. See id.

[¶172] Because the Defendant's claims do not relate back to the claims in the original motion, they are subject to the one-year statute of limitations under 28 U.S.C. § 2255(f)(1) unless the Defendant can provide a justification for equitably tolling the statute of limitations. As discussed below, the Defendant has failed to meet his burden in this regard.

### b. Equitable Tolling

[¶173] Acknowledging his new claims do not relate back to the original claims, the Defendant essentially asks the Court to equitably toll the statute of limitations and allow him to assert the new claims. As grounds, he argues the COVID-19 pandemic in the correctional facility made it difficult for him to conduct legal research on these issues. In fact, he claims it was not until he discussed the matter with a "jailhouse lawyer" that he discovered these newly asserted claims. On those grounds, he asks the Court to toll the statute of limitations at 28 U.S.C. § 2255(f).

[¶174] The United States argues the Defendant has failed to diligently pursue his rights and only learned of the new claims in November of 2021 after talking to the "jailhouse lawyer." The United States also asserts there were no extraordinary circumstances preventing him from timely filing these claims because the COVID-19 pandemic did not begin until over a year after the statute of limitations ran. The Court agrees with the United States.

[¶175] When a petitioner fails to timely file a claim under 28 U.S.C. § 2255, he may ask the court to equitably toll the statute of limitations at Section 2255(f). Odie v. United States, 42 F.4th 940,

945 (8th Cir. 2022) ("Equitable tolling may be applied to the one-year statute of limitations."). The Eighth Circuit has described equitable tolling of the statute of limitations in 28 U.S.C. § 2255(f) as an "extraordinary" remedy. <u>Jihad v. Hvass</u>, 267 F.3d 803, 805 (8th Cir. 2001); <u>Chachanko v. United States</u>, 935 F.3d 627, 629 (8th Cir. 2019). Indeed, equitable tolling "affords the otherwise time-barred petitioner an exceedingly narrow window of relief." <u>Jihad</u>, 267 F.3d at 805. In order to establish equitable tolling under the circumstances, a petitioner must show (1) he diligently pursued his rights and (2) an extraordinary circumstance prevented the timely filing of the new claims. <u>Burks v. Kelley</u>, 881 F.3d 663, 666 (8th Cir. 2019); <u>Chachanko</u>, 935 F.3d at 627. The Defendant's claim for equitable tolling fails on both elements for equitable tolling.

[¶176] The Defendant has not pursued his rights diligently. The statute of limitations ran in January 2019. He claims he did not learn of the ability to assert these new claims until November, 2021 after talking to a "jailhouse lawyer." <u>See</u> Doc. No. 489, p. 2. The time between the statute of limitations running and when he first states he learned of the claims is almost three years after the time to bring the new claims. He has provided no justification for not pursuing these claims earlier and the grounds he has provided do not show he acted diligently in pursuing his rights.

[¶177] The Defendant has likewise failed to show any extraordinary circumstance existed that prevented him from bringing these claims before the statute of limitations ran. The Defendant argues the COVID-19 modified its operations that limited his ability to research the issues, creating an extraordinary circumstance. When viewed in the broader timeframe of this case, this is not an extraordinary circumstance. Again, the statute of limitations ran in January, 2019. The Court was first made aware of the COVID restrictions on April 23, 2020, when the Defendant asked for additional time to file his Reply due to the COVID-19 restrictions put in place by the Bureau of Prisons. Doc. Nos. 454, 454-1. This is well over a year after the statute of limitations ran. The

Defendant could have researched these issues before the COVID-19 lockdowns began. Indeed, the COVID-19 Pandemic began well after the statute of limitations ran and the restrictions could not have prevented him from timely filing his new claims because the restrictions did not exist at the time the statute of limitations ran.[23]

[¶178] Accordingly, the Defendant has failed to show he is entitled to equitable tolling of the statute of limitations under 28 U.S.C. § 2255(f).

### c.  Constitutionality of the One-Year Statute of Limitations in 28 U.S.C. § 2255(f)

[¶179] The Defendant claims the one-year statute of limitations at 28 U.S.C. § 2255(f) is unconstitutional in violation of the Thirteenth Amendment's prohibition on involuntary servitude, relying on United States v. Morgan, 222 F.2d 673 (2d Cir. 1955). The United States argues courts throughout the United States have routinely found the statute of limitations is constitutional. The Court agrees with the United States.

[¶180] The Defendant solely relies on Morgan in claiming the statute of limitations violates the 13th Amendment's prohibition on involuntary servitude. Morgan is distinguishable and inapplicable to the present case. In Morgan, the defendant petitioned the Court to vacate his conviction because he "was not advised of his right to counsel, and that he did not intelligently waive such right." 222 F.2d at 674. Despite finding those facts, the district judge denied Morgan's request because "Morgan (a) made no showing of his innocence, and (b) had too long slept upon his rights." Id. The Second Circuit concluded, "[t]he passage of many years does not cure a void conviction." Id. at 675.  In explaining this, the court noted the sentence was unlawfully imposed

---

[23] The Court also notes the Defendant did file a timely Motion to Vacate under 28 U.S.C. § 2255. This is further evidence there was no extraordinary circumstance that prevented him from timely filing the new claims.

because the Defendant had not been informed of his right to counsel under the Sixth Amendment and he did not intelligently waive that right. Id.

[¶181]  In the present case, there is simply no claim the Defendant was not informed of his right to counsel and did not intelligently waive his right to counsel. In fact, the record clearly reflects the Defendant had appointed counsel from the very beginning of the proceedings through the appeal stage. Morgan simply has no bearing on the facts and circumstances of this case. Because he was afforded counsel throughout the entire process, his claim the statue of limitations is unconstitutional based on Morgan is meritless.

[¶182]  The Supreme Court's decision in Felker v. Turpin refutes the Defendant's assertions. See 518 U.S. 651, 664 (1996). In Felker, the Supreme Court considered the need for leave of court to file successive habeas petitions. Id. The Supreme Court held the Suspension Clause did not operate to bar this requirement. Id. In holding this, the Supreme Court noted the power to grant a writ is given by law and "judgments about the proper scope of the writ are normally for Congress to make." Id. (citation and quotation marks omitted). As such, the Supreme Court concluded, "[t]he added restrictions which the Act places on second habeas petitions are well within the compass of this evolutionary process, and we hold that they do not amount to a 'suspension' of the writ contrary to article I, § 9." Id.

[¶183]  The same reasoning applies to the present case. The statute of limitations does not act as a suspension of the writ of habeas corpus because it is within Congress's authority to determine the scope and ability to request habeas corpus. See id. In concluding the statute of limitations under 28 U.S.C. § 2255(f) is constitutional, the Court joins a litany of other courts who have routinely held the statute of limitations is constitutional as noted by the United States. See United States v. Sandoval, 371 Fed. App'x 945, 949, n. 3 (10th Cir. 2010) ("[C]ontrary to Mr. Dandoval's

contention, the limitation period does not violate the Constitution."); United States v. Alonzo, 2008 WL 5392110, at * 3 (D.N.D. Dec. 19, 2008) (concluding the one-year statute of limitations at Section 2255(f) does not violate the Suspension Clause); Ritchie v. United States, 2006 WL 249977, at *2 (E.D. Mo. Jan. 31, 2006) (rejecting a claim the statute of limitations "is an unconstitutional limitation on the remedy available under § 2255"); Lucidore v. N.Y. State Div. of Parole, 209 F.3d 107, 113 (2d Cir. 2000) ("[B]ecause [Section 2255(f)'s] one-year statute of limitations leaves habeas petitioners with some reasonable opportunity to have their claims heard on the merits, the limitations period does not render the habeas remedy inadequate or ineffective to test the legality of detention, and therefore does not *per se* constitute an unconstitutional suspension of the writ of habeas corpus.") (citation and quotation marks omitted); Wyzkowski v. Dep't of Corrections, 226 F.3d 1213, 1216-17 & n.3 (11th Cir. 2000) (collecting cases and discussing a virtually identical statute of limitations in the habeas corpus statute found at 28 U.S.C. § 2244(d)(1), concluding it "does not render the collateral relief ineffective or inadequate to test the legality of detention, and therefore is not an unconstitutional suspension of the writ of habeas corpus"); Weaver v. United States, 195 F.3d 123, 125 (2nd Cir. 1999) (statute of limitations under 28 U.S.C. § 2255(f) does not unconstitutionally suspend the writ of habeas corpus); Triestman v. United States, 124 F.3d 361, 375 (2d Cir. 1997) ("'[T]he remedy afforded by § 2255 is not rendered inadequate or ineffective merely because an individual has been unable to obtain relief under that provision, or because an individual is procedurally barred form filing a § 2255 motion.'" (quoting In re Vial, 115 F.3d 1192, 1194, n.5 (4th Cir. 1997))).

[¶184] Accordingly, the one-year statute of limitations in Section 2255(f) is not unconstitutional.

### d. The Defendant's New Claims Fall Outside the Statute of Limitations

[¶185] The Defendant failed to raise his new claims within the one-year statute of limitations found at 28 U.S.C. § 2255(f). None of the new claims are related to those asserted in the original Motion to Vacate. Therefore, the claims are subject to the one-year statute of limitations. While such claims may be asserted if the Court finds equitable tolling of the statute of limitations is appropriate, the Defendant has failed to establish he is entitled to such relief because he failed to diligently pursue his rights and there are no extraordinary circumstances that prevented him from timely filing the new claims. In addition, the Court concludes the one-year statute of limitations in Section 2255(f) is constitutional. Accordingly, the Defendant's Motion for Leave to File Supplemental Claims is **DENIED**.[24]

### CONCLUSION

[¶186] Looking at the record in this case, it becomes clear the Defendant's dissatisfaction can only be interpreted through his own repeated failure to assist in his defense. Throughout representation, the Defendant was difficult and non-communicative with Attorney Toay. If there was any deficient performance, it was grounded solely in the Defendant's obstinate refusal to work with Attorney Toay. As noted at various times on the record and above, Attorney Toay provided competent representation especially in light of the Defendant's stubborn refusal to participate in his defense. The same holds true for Attorney Rosenfeldt's representation of the Defendant.

[¶187] Accordingly, Court has carefully reviewed the entire record, the parties' filings, and the relevant caselaw. For the reasons set forth above, the Defendant's Motion to Vacate under 28 U.S.C. § 2255 (Doc. No. 428) and his Motion for Leave to File Supplement Grounds (Doc. No.

---

[24] The Defendant also requests an evidentiary hearing. Doc. No. 489-1 at p. 11. The Court concludes an evidentiary hearing is unnecessary to determine the timeliness of the new claims is unnecessary. The request for an evidentiary hearing is, therefore, denied.

489) are **DENIED**. The Motion to Vacate (Doc. No. 428) is, therefore, **DISMISSED**. It is further

**ORDERED**:

1)      The Court certifies that an appeal from the denial of this motion may not be taken in forma pauperis because such an appeal would be frivolous and cannot be taken in good faith.  Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

2)      Based upon the entire record before the Court, dismissal of the motion is not debatable, reasonably subject to a different outcome on appeal, or otherwise deserving of further proceedings. Therefore, a certificate of appealability will not be issued by this Court.  See Tiedeman v. Benson, 122 F.3d 518, 252 (8th Cir. 1997) (finding that a district court possesses the authority to issue certificates of appealability under Section 2255(c)). If the petitioner desires further review of his petition, he may request the issuance of a certificate of appealability by a circuit judge of the Eighth Circuit Court of Appeals.

[¶188] **IT IS SO ORDERED.**

DATED August 31, 2023.

Daniel M. Traynor, District Judge
United States District Court